No. 87,583

WATERVIEW RESOLUTION CORP., f/k/a COLONIAL PACIFIC LEASING CORP., *Appellant,* v. JAMES ALLEN, d/b/a ALLEN VETERINARY CENTER, *Appellee.*

(58 P.3d 1284)

Opinion filed December 6, 2002.

*Joel A. Mintzer*, of Robins, Kaplan, Miller & Ciresi, L.L.P., of Minneapolis, MN, argued the cause, and *Todd B. Butler*, of Butler & Associates, P.A., of Topeka, and *Gary L. Fanning, Jr.*, of the same firm, were on the brief for appellant.

*Jim D. Garner*, of Coffeyville, argued the cause, and *Curt T. Schneider*, of Schneider Law Office, of Coffeyville, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This appeal involves a dispute between parties to a lease agreement for an electronic message board. The plaintiff, relying upon the modified lease terms entered by a bankruptcy court in a Chapter 11 confirmation order, filed an action for the amount due under the modified lease in Labette County District Court. The lessee defendant raised a statute of limitation defense based upon the original lease provisions. The trial court concluded that the bankruptcy court had no jurisdiction to modify the lease and granted dismissal for failure to bring the action within the statute of limitations. The plaintiff appeals.

Our jurisdiction is based upon this court's transfer from the Court of Appeals pursuant to K.S.A. 20-3018(c).

After visiting a booth at the Kansas State Fair, James Allen, D.V.M., expressed an interest in having an electronic message board sold by Recomm International Display, Ltd. (Recomm) placed in his veterinary center in Labette County, Kansas. Soon thereafter, a salesman for Recomm called on Allen and presented him with a lease agreement for an electronic message board.

Allen entered into a lease agreement with GIC Leasing, Inc., on January 18, 1995. He agreed to lease the electronic message board from GIC for $298.20 a month for 48 months. GIC handled the transaction and financed the lease agreement on behalf of Recomm. On February 1, 1995, the lease was transferred to Colonial Pacific Leasing Corp. Colonial later changed its name to Waterview Resolution Corp. (Waterview), the plaintiff in this action.

Allen entered into a separate agreement with Recomm wherein Recomm agreed to pay Allen a license fee of $270 a month for the right to advertise on the electronic message board. Recomm failed to make the required payments and Allen, in turn, refused to make payments to Waterview. Waterview sent a letter to Allen on December 19, 1995, informing him of his delinquency and demanding $2,214.07. Waterview sent another letter to Allen on January 5, 1996, announcing its intention of accelerating the remaining unpaid balance due and demanding payment of $12,244.86.

On January 31, 1996, Recomm filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division. Allen, as a creditor of Recomm, received notice of the bankruptcy proceeding with an opportunity to respond. Allen did not enter an appearance in the bankruptcy proceeding. At oral argument, Allen's attorney admitted his client was put on notice of the bankruptcy court's assumption of jurisdiction and subsequent reformation of the lease. Allen does not take issue with the bankruptcy court's assumption of personal jurisdiction on appeal.

On May 13, 1998, the bankruptcy court entered its order confirming Recomm's reorganization plan which, in part, reformed the original lease agreement between Allen and Waterview. Allen failed to make the monthly payments to Waterview as required under the modified lease agreement. Waterview filed suit to enforce the provisions of the modified lease agreement. In an amended petition, Waterview made clear that it relied on the breach of the lease modified by the bankruptcy court confirmation order dated May 13, 1998.

In its memorandum decision the trial court noted:

"Recomm filed for bankruptcy protection in the United States Bankruptcy Court in Florida and, according to information provided by plaintiff, since the two contracts were so integral with one another that the bankruptcy court assumed jurisdiction over both contracts, put the defendant [Allen] on notice, and on May 13, 1998, reformed the contractual arrangements of the parties."

The trial court dismissed Waterview's action based upon its determination, consistent with the terms of the original lease agreement between the parties, that the applicable 4-year statute of limitation had elapsed. See K.S.A. 84-2a-506(1) (4-year statute of limitation for leases). The trial court relied upon the provisions of K.S.A. 60-520(a), which provide:

"In any case founded on a contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the time period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

The trial court noted that Waterview failed to present any writing signed by Allen concerning any new promise and that Waterview was not entitled to any extension or renewal of the limitation period due to the bankruptcy proceedings. Thus, the court concluded that the appropriate time for starting the limitation period was January 5, 1996, when Waterview notified Allen by letter that it was accelerating the unpaid balance under the terms of the original lease. Waterview had filed its action September 1, 2000, almost 9 months beyond the 4-year statute of limitations if calculated from the January 5, 1996, letter. Allen's motion to dismiss based upon the statute of limitations was, therefore, granted.

Waterview's action was timely filed under the lease as modified by the May 13, 1998, confirmation order entered by the bankruptcy court. The basis for the trial court's decision lies in its determination that the bankruptcy court had no jurisdiction to modify the lease agreement between Allen and Waterview, for if the modified lease was valid, the statute of limitations defense would fail. The trial court noted:

"The Court then turns to the issue of whether a United States bankruptcy court has the jurisdiction to modify the contractual terms of two parties who are not

parties to the bankruptcy action. While the plaintiff [Waterview] argues that: (1) the Florida Bankruptcy Court has a right to assume jurisdiction because the two contracts were closely related; and (2) the bankruptcy court did in fact assume jurisdiction, the plaintiff offers no legal authority in support of its argument that the bankruptcy court has a right to assume jurisdiction. This Court finds, therefore, that the plaintiff has failed to meet its burden of proving that United States Bankruptcy Court for the Middle District of Florida, Tampa Division, had a right to assume jurisdiction over the lease agreement between the parties to this action and reform their contractual rights and obligations."

During the pendency of this case, Waterview initiated an adversary proceeding against Allen in the bankruptcy court, asking for a specific order to enforce the May 13, 1998, order confirming the bankruptcy plan. On January 25, 2002, the bankruptcy court entered the following order:

"The *Confirmation Order* contains four provisions material to this adversary proceeding. First, the *Confirmation Order* modified the lease obligations that defendant James Allen ('Allen') owes to Colonial [Waterview]. Second, the *Confirmation Order* released all claims between Colonial and Allen that existed before the *Plan's* effective date of June 30, 1998, including all claims arising under the unmodified lease. Third, the *Confirmation Order* enjoined Colonial and Allen from asserting claims or defenses against the other for conduct occurring before June 30, 1998. And fourth, the Court determined that it had jurisdiction to modify the leases, and to release and enjoin the claims arising before June 30, 1998."

The bankruptcy court found that Allen violated the confirmation order with his statute of limitations defense and ordered Allen to notify the Kansas Court of Appeals of its order. The January 25, 2002, order also confirmed:

"2. The Court declares that the *Confirmation Order* modified the lease agreement between Allen and Colonial and that any statute of limitations must be measured in accordance with the lease as modified, and not based on events preceding June 30, 1998.

"3. Defendant James Allen is hereby enjoined from asserting any defense in the Kansas state courts that is barred by the *Plan* or the *Confirmation Order* entered in Recomm's bankruptcy proceedings, specifically including any defense that measures the statute of limitations from a date preceding June 30, 1998, as well as any defense based on this Court's alleged lack of jurisdiction."

Allen filed a copy of the bankruptcy order with the Court of Appeals, in addition to a motion requesting that court to determine

jurisdiction. After transfer, we refused to act on Allen's motion, as to do so would result in an advisory opinion.

*Analysis and Discussion*

The district court decided that in modifying the lease between Allen and Waterview, the bankruptcy court had no "right to assume jurisdiction over the lease agreement between the parties to this action and reform their contractual rights and obligations." As found by the trial court, the bankruptcy court had no jurisdiction, its confirmation order modification of the lease agreement between Allen and Waterview was void, and the terms of the original lease between the parties controlled.

The matter of the bankruptcy court's jurisdiction is now before this court within the context of a case or controversy. The questions concerning the bankruptcy court's jurisdiction are central to the resolution of the issues in this appeal. We first must address whether the authority existed to inquire into the question of jurisdiction. The question unanswered by the trial court was whether the trial court may inquire into the matter of the bankruptcy court's jurisdiction.

We first consider the issue of notice and opportunity with regard to the bankruptcy proceeding. The record is not entirely clear concerning the notice to Allen of the bankruptcy proceeding filed by Recomm. In his brief and argument before this court, Allen admits that as a creditor he had notice of the Recomm bankruptcy proceedings and an opportunity to raise the question of jurisdiction. This opportunity extended to contesting jurisdiction of the bankruptcy and the confirmation plan modifying the contract between Allen and Waterview. The opportunity also involved the right to appeal to a federal district court any adverse orders entered in the Recomm bankruptcy. Instead of availing himself of these opportunities, Allen seeks to collaterally attack the bankruptcy court's assumption of jurisdiction over the contract between Allen and Waterview and the confirmation plan modifying his contract.

During oral argument, counsel for Allen responded to questions posed by the court regarding his notice and opportunity to be heard by the bankruptcy court on these critical questions. Counsel agreed

that Allen got the mailings from the bankruptcy court but never retained counsel and never made an appearance in the bankruptcy court. He acknowledged that Allen was a party to the bankruptcy proceedings and had notice that the lease in question was modified by the bankruptcy court. Thus, we conclude that Allen was a party to the bankruptcy proceeding and both received notice and had the opportunity to participate.

Waterview, relying upon *Celotex Corp. v. Edwards*, 514 U. S. 300, 131 L. Ed. 2d 403, 115 S. Ct. 1493 (1995), argued that the trial court's inquiry into the bankruptcy court's jurisdiction was foreclosed. In *Celotex,* a federal court in Texas refused to comply with an injunction issued by a bankruptcy court in Florida, and the Fifth Circuit Court of Appeals affirmed. The United States Supreme Court reversed, stating:

> "We have made clear that ' "[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected." ' [Citations omitted.] If respondents believe the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. [Citation omitted.] If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal 'to the district court for the judicial district in which the bankruptcy judge is serving,' [citation omitted] and then to the Court of Appeals for the Eleventh Circuit [citation omitted]. Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law." 514 U.S. at 313.

Allen did not challenge the bankruptcy court jurisdiction before the trial court, but the trial court's decision to dismiss Waterview's case was only possible by reason of the trial court's determination that the bankruptcy court had no jurisdiction to modify the lease.

*Res Judicata*

Waterview argues that once the bankruptcy court determined it had jurisdiction over the parties and the lease, and had the authority to modify the lease, the question of jurisdiction was resolved. Allen chose not to enter his appearance and did not ques-

tion the bankruptcy court's jurisdiction. Waterview contends that the matter of jurisdiction was, therefore, res judicata and may not be collaterally attacked in the district court. Subject to due process guarantees, the question of giving finality to prior judgments is a matter to be resolved by Kansas law. *Richards v. Jefferson County,* 517 U.S. 793, 797, 135 L. Ed. 2d 76, 116 S. Ct. 1761 (1996).

Kansas law provides that four conditions must be met in order that a prior adjudication becomes res judicata. Kansas law also sets forth three conditions before a party will be estopped from collaterally attacking a prior adjudication:

"An issue is res judicata when four conditions concur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and [4] identity in the quality of persons for or against whom claim is made. [Citation omitted.] The requirements of collateral estoppel are: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. [Citation omitted.]" *Regency Park v. City of Topeka,* 267 Kan. 465, 478, 981 P.2d 256 (1999).

The question raised in this appeal is whether the trial court was authorized to inquire into the jurisdiction of the bankruptcy court. Some courts address the question as involving res judicata, while others approach the problem as one involving collateral estoppel. The present case more appropriately involves the question of collateral estoppel or issue preclusion. See *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 894 (10th Cir. 1994). While the concept of res judicata is broad enough to encompass both claim preclusion and issue preclusion, the modern trend is to refer to claim preclusion as res judicata and issue preclusion as collateral estoppel. See 46 Am. Jur. 2d, Judgments § 516.

The American Jurisprudence Encyclopedia generally notes that a court's determination of its jurisdiction is conclusive:

"A prior adjudication on the question of jurisdiction is conclusive as to that issue, whether it is jurisdiction of the subject matter or of the parties. Under this rule, if a court is competent to decide whether the facts in any given proceeding confer jurisdiction and it decides that facts conferring jurisdiction are present, its unreversed and unvacated judgment, entered within the scope of the subject matter over which its authority extends, is supported by a conclusive presumption

of jurisdiction. This is true even if the determination of jurisdictional facts is erroneous; relitigation will not be permitted to determine whether the court correctly found the facts on which the jurisdiction depends." 46 Am. Jur. 2d, Judgments § 42.

See *In re Estate of Johnson*, 180 Kan. 740, 744-48, 308 P.2d 100 (1957) (declining to consider whether a probate court's finding in a prior proceeding upon which that probate court's subject matter jurisdiction rested was erroneous).

There are limits to the argument that collateral estoppel precludes consideration of a former judgment. A void judgment may be attacked at any time. *Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, 611, 24 P.3d 113 (2001). A judgment is void if the court that rendered it lacked subject matter jurisdiction, personal jurisdiction, or acted in a manner inconsistent with due process. *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 21, 558 P.2d 101 (1976). However, when dealing with a collateral attack upon a judgment, the one asserting the attack has the burden:

"Collateral attacks upon judicial proceedings are never favored, and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void, but will be held to be valid. [Citations omitted.]" *Woodring v. Hall*, 200 Kan. 597, 605, 438 P.2d 135 (1968).

In dealing with the collateral attack upon the judgment, the district court should have considered whether the subject matter, the issues, and the character of the judgment rendered were of a class within the scope of the powers of the bankruptcy court. See 46 Am. Jur. 2d, Judgments § 571.

In the present case, the bankruptcy court's subject matter involved the lease of an electronic message board on which the petitioner in bankruptcy, Recomm, had a license to display advertising and was, therefore, of a class within the powers of the bankruptcy court. We conclude that the issues of jurisdiction and power to modify the lease were resolved by a court of competent jurisdiction and those issues are not subject to collateral attack in the district courts of Kansas. The trial court's determination that the United States Bankruptcy Court for the Middle District of

Florida had no jurisdiction to modify the lease agreement was in error and is reversed.

Several cases illustrate the concept that a decided and unappealed determination on the question of jurisdiction is not a proper subject of inquiry by another court. In *In re North Alabama Anesthesiology Group, P.C.*, 154 Bankr. 752 (N. D. Ala. 1993), a creditor, James Zickler, entered into a consulting and noncompete agreement with the debtor, North Alabama Anesthesiology Group (NAAG). NAAG's obligations were personally guaranteed by James Jeter and Thomas Shultz. NAAG filed a Chapter 11 bankruptcy petition, and the reorganization plan also discharged any debt against Jeter and Shultz.

Before the reorganization plan was confirmed, Zickler brought a civil action against NAAG, Jeter, and Shultz. In their answer filed after the confirmation of the reorganization plan, Jeter and Shultz argued the bankruptcy court's order released them from any liability. The Alabama trial court granted Jeter and Shultz summary judgment, but the Alabama Supreme Court held "that the bankruptcy court's confirmation order did not bar Zickler's state court action against Jeter and Shultz under the doctrine of res judicata and reversed the trial court's judgment." 154 Bankr. at 755. See *Zickler v. Shultz*, 603 So. 2d 916 (Ala. 1992).

Following the state supreme court decision, NAAG, Jeter, and Shultz, filed a complaint in the bankruptcy court to stop the state court action. The bankruptcy court eventually enjoined Zickler from prosecuting the state court action.

On appeal to the federal district court, Zickler made two arguments: (1) Zickler did not have notice from the bankruptcy court of the confirmation hearing, and (2) the bankruptcy court lacked subject matter jurisdiction to release Jeter and Shultz. Jeter and Shultz, like Waterview in this case, argued "that a creditor such as Zickler may not collaterally attack provisions in a confirmed Chapter 11 plan of reorganization because an order confirming a reorganization plan is entitled to res judicata effect." 154 Bankr. at 756. The federal district court, without definitively answering the question of whether the bankruptcy court originally had subject matter jurisdiction to release Jeter and Shultz, concluded, following a dis-

cussion of the res judicata elements, that "the bankruptcy court's order releasing Jeter and Shultz as guarantors was of the type which is entitled to res judicata effect." 154 Bankr. at 761.

In this case, the bankruptcy court found it had jurisdiction over the lease agreement between Waterview and Allen. The *North Alabama* court explained that such decisions are conclusive for res judicata purposes:

"Therefore, a bankruptcy court's authority arguably extends, for purposes of res judicata consideration, beyond the bankruptcy estate so long as the parties to the bankruptcy proceeding have the opportunity to raise the question of jurisdiction. Based on the foregoing analysis, this court concludes that the bankruptcy court, in confirming NAAG's reorganization plan, determined that it had subject matter jurisdiction. Furthermore, Zickler had the opportunity to object to the reorganization plan and did not appeal the bankruptcy court's decision confirming NAAG's reorganization plan. Consequently, this court concludes that the bankruptcy court's order confirming NAAG's reorganization plan constituted a 'final judgment by a court of competent jurisdiction' for res judicata purposes." 154 Bankr. at 760.

In *In Re McGhan*, 288 F.3d 1172 (9th Cir. 2002), the Ninth Circuit Court of Appeals reviewed a bankruptcy court's refusal to reopen a Chapter 7 bankruptcy case for the debtor to file a complaint for violation of the permanent discharge. The debtor originally filed a Chapter 7 petition for bankruptcy following his convictions for sexual molestation. The debtor listed his stepson, who was one of the sexual molestation victims, as the holder of a claim in the form of a potential civil action. The bankruptcy court issued the discharge order that discharged the debtor's debt to the victim.

After the victim reached adulthood, he brought a civil action in California state court seeking damages from the debtor. In the state court, the debtor argued the victim "was estopped from collaterally attacking the validity of the discharge order and injunction in state court." However, the victim argued the state court should not honor the bankruptcy discharge "because he had not received the notice required by § 523(c)(1) as a prerequisite to automatic discharge." The state court agreed and found it had jurisdiction to determine the sufficiency of the notice given to the victim, finally concluding the notice was indeed inadequate. The debtor returned to bankruptcy court seeking to file a complaint for the violation of

the permanent discharge injunction. The bankruptcy court refused to reopen the case, and the debtor appealed to the Ninth Circuit.

The Ninth Circuit reversed the bankruptcy court's refusal to reopen the bankruptcy case, finding the state court had no authority to adjudicate the adequacy of the victim's notice. Relying on another Ninth Circuit case, *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000), the court held:

"Second, *Gruntz* bars state court intrusions on all 'bankruptcy court orders' (or other 'core' bankruptcy proceedings), 202 F3d at 1082, not just the automatic stay. As we stated in *Gruntz*, 'state courts should not intrude upon the plenary power of the federal courts in administering bankruptcy cases by attempting to modify or extinguish federal court orders such as the automatic stay. [Citation omitted.]" 288 F.3d at 1179.

The court concluded that it was error for the bankruptcy court to refuse to reopen the bankruptcy proceeding. 288 F.3d at 1181-82. See also *Marine Midland Bus. Loans v. Miami Trucolor Offset*, 217 Bankr. 341, 345 (S. D. Fla. 1998) ("assuming proper notice has been given, a creditor cannot object to a provision in a reorganization plan that has been confirmed by the bankruptcy court without objection and not directly appealed"); *In re Bowen*, 174 Bankr. 840, 847 (Bankr. S. D. Ga. 1994) ("Therefore, the contents of a plan of reorganization may not be challenged on the grounds that the plan's provisions are contrary to applicable law absent an appeal.").

*Confirmation Order*

Waterview argued that the bankruptcy court modified the lease agreement between Allen and Waterview, thus creating a renewed contract obligation from which the statute of limitations should be calculated. The interpretation and application of a statute of limitations is a question of law for which an appellate court's review is unlimited. *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

Allen does not dispute Waterview's interpretation of the reorganization plan as it applies to the lease between them. Rather, Allen argued the issue is whether "such modification extends the limitation period for bringing an action in Kansas." His argument as set forth in his brief and before this court is as follows:

"Plaintiff [Waterview] tries to make much out of the federal bankruptcy court's Order as res judicata. First, the issues before the bankruptcy court are not identical to the issues presented to the Kansas District Court. The issue before the bankruptcy court was the modification of the leases to preserve the value of the asset of the bankruptcy debtor. The issue in this litigation is whether the bankruptcy court's Order extended the limitation's period for plaintiff to bring a collection lawsuit under Kansas law. These are completely different issues and the bankruptcy court never addressed the present issue before the Court. The bankruptcy court Order is in no way res judicata of any issue before this Court.

. . . .

"The bankruptcy court may certainly have the jurisdiction and authority to modify the lease agreement—that is not the issue before this Court. Nevertheless, the use of any such modification of a lease agreement to alter and extend the limitation period for pursuing a claim under the lease in Kansas must comply with the requirements of Kansas law, as set out in K.S.A. 60-520(a)."

The issue is not, as Allen maintains, "whether the bankruptcy court's Order extended the limitation's period for plaintiff to bring a collection lawsuit under Kansas law." Rather, the issue is whether the bankruptcy court's determination of its own jurisdiction is subject to collateral attack. See *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987).

*In re Wrenn Ins. Agency of Missouri, Inc.*, 178 Bankr. 792, 796 (Bankr. W. D. Mo. 1995), observed that a confirmed Chapter 11 bankruptcy plan is a contract and that once a plan is confirmed, a creditor may not assert rights inconsistent with its provisions. The Tenth Circuit held in *Paul v. Monts*, 906 F.2d 1468, 1476 (10th Cir. 1990), that federal preemption does not bar a "claim for breach of contract premised on the plan of reorganization." *In re Nylon Net Co.*, 225 Bankr. 404, 406 (Bankr. W. D. Tenn. 1998), summarized the *Paul* holding:

"The Tenth Circuit has expressly held that a state law breach of contract action may be brought for a breach of chapter 11 plan obligations. [Citation omitted.] *In Paul v. Monts*, a Chapter 11 debtor in possession asserted a cause of action to enforce a provision of the plan of reorganization under a contract theory. The Court considered whether the remedies provided in the Bankruptcy Code for enforcing a Chapter 11 plan of reorganization are exclusive, and it determined that the mere availability of alternative Code remedies does not render the Code remedies exclusive. [Citation omitted.] That Court noted that 'the underlying creditors' rights asserted in bankruptcy proceedings are creatures of state law,"

[citations omitted], and determined that a state law breach of contract action premised on the debtor's plan of reorganization was proper. [Citation omitted.]"

Last, "a confirmed plan has res judicata effect." *Wrenn*, 178 Bankr. at 796.

The plan of reorganization in this case provided: "(3) Modification to Leases (exclusive of Kiosk Leases): As of the Effective Date, the Leases (exclusive of Kiosk Leases) of Participating Lessees [Allen] that are parties to Advertising Contracts shall be deemed modified and revised as set forth below, which modifications shall be deemed effective as of the Effective Date." The bankruptcy court also released all existing claims Allen had against Waterview:

"22. As of the Effective Date, all Persons, including but not limited to, *all Lessees* [Allen] *and all individuals or entities that had notice of the Reorganization Cases are permanently enjoined from asserting* against the Released Lessor Parties [Waterview] . . . *any other or further claims or causes of action based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.* On and after the Effective Date, all Persons who have held, currently hold or may hold a claim or cause of action released pursuant to the terms of the Fourth Amended Plan are permanently enjoined from taking any of the following actions on account of any such released claim or cause of action, (a) commencing or continuing in any manner any action or other proceeding against a . . . Participating Lessor [Waterview] . . .; or (e) commencing or continuing any action in any manner in any place that does not comply with or is inconsistent with the provisions of the Fourth Amended Plan or the Confirmation Order. Any Person violating such injunction may be in contempt of court and may be liable for actual damages, including costs and attorneys' fees." (Emphasis added.)

The plan precludes Allen from asserting that under the relevant statute of limitations defense, the time should be calculated from the original breach of the contract, as it would require an assertion of an act occurring prior to the effective date of the reorganization plan. This court calculates the statute of limitations from the time of the breach of the reorganization plan, which followed the bankruptcy court's approval of the plan. The bankruptcy court was not extending the limitations period as Allen suggests but, rather, creating a new contract obligation that Waterview seeks to enforce in Kansas.

Allen argues that a bankruptcy court cannot modify a contract unless there was compliance with Kansas law and unless he assented to the modification "in writing" and "signed" the modification. See K.S.A. 60-520. The Federal Bankruptcy Code provides: "[T]he provisions of a confirmed plan bind the debtor, . . . and any creditor, . . . whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a) (2000). In addressing this issue, the Tenth Circuit Court of Appeals explained that a reorganization plan has some of the indicia of a contract, but it is also much more than a contract, and by statute, the plan is enforceable even as to persons who did not agree to its terms. *In re CF & 1 Fabricators of Utah, Inc.*, 150 F.3d 1233, 1239 (10th Cir. 1998).

The confirmation order in this case modified the terms of the lease agreement between Allen and Waterview and settled the earlier dispute between Allen and Waterview. The confirmation order established a new and discounted lease obligation. Although Allen did not sign the agreement, by federal statute he was deemed a party to it. See *In re Scott*, 172 F. 3rd 959, 962 (7th Cir. 1999); *In re Salina Speedway, Inc.*, 210 Bankr. 851, 855 (Bankr. 10th Cir. 1997). Allen's reliance upon K.S.A. 60-520(a) ignores the bankruptcy court's power by federal statute to modify the agreement in its confirmation order.

We conclude that the district court erred in dismissing Waterview's action based upon the statute of limitations.

Reversed and remanded.

LARSON, S.J., assigned.