(297 P.3d 1180)

No. 107,763

SANFORD R. FYLER *Appellee*, v. BRUNDAGE-BONE CONCRETE PUMPING, INC., *Appellant*.

—

Opinion filed February 22, 2013.

*Bruce A. Moothart, Mark T. Benedict*, and *Ryan J. Watson*, of Husch Blackwell LLP, of Kansas City, Missouri, for appellant.

*Scott J. Mann*, of Mann Law Offices, LLC, of Hutchinson, for appellee.

Before MALONE, C.J., HILL and BRUNS, JJ.

HILL, J.: This is an appeal of a district court order directing a debtor involved in a Chapter 11 bankruptcy proceeding, Brundage-Bone Concrete Pumping, Inc., to make a $50,000 cash payment to a creditor, Sanford R. Fyler. Chapter 11 cases seek reorganization

of the assets of a debtor rather than a liquidation of assets sought in Chapter 7 filings. All bankruptcy proceedings are within the exclusive jurisdiction of the federal courts. State courts can decide only ancillary matters, such as tort claims against a debtor, as permitted by the appropriate federal court. In this case, the alternative dispute resolution order of the bankruptcy court directed that any settlement or judgment made on a tort claim against Brundage-Bone shall be in the form of an allowed general unsecured claim. Because the order of a cash payment here violates the mandatory alternative dispute resolution procedures adopted by the United States Bankruptcy Court overseeing this debtor-in-possession proceeding, we hold the district court had no jurisdiction to order a cash payment. We reverse and remand.

## Brundage-Bone seeks reorganization.

In January 2010, Brundage-Bone Concrete Pumping, Inc., filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the District of Colorado under 11 U.S.C. § 301 (2006). Brundage-Bone's petition estimated the number of its creditors to be between 1,000 and 5,000, and funds would be available to pay unsecured creditors. Then, in March 2010, Sanford R. Fyler asked the bankruptcy court for relief from its stay order so he could proceed with a state court tort claim against Brundage-Bone. In seeking relief under 11 U.S.C. § 362(d)(1) (2006), Fyler sought to pursue litigation in state court to establish the fact and amount of Brundage-Bone's alleged liability arising out of Fyler's tort claim for negligence against Brundage-Bone and a codefendant.

In due course, the bankruptcy court, upon Brundage-Bone's request, entered an alternative dispute resolution (ADR) order under 11 U.S.C. § 105(a) (2006) that established procedures for resolution of any tort claims. This ADR order enjoined all claimants from commencing or continuing any action to establish, liquidate, collect or otherwise enforce any tort claim against Brundage-Bone other than through the ADR procedures described in the ADR order. After that, Brundage-Bone and Fyler jointly submitted a stipulation agreeing to lift the stay order concerning Fyler's claim. The bank-

ruptcy court approved the stipulation and lifted its stay order concerning Fyler's claim in January 2011.

*The dispute moves to Kansas.*

After that, Fyler filed a petition in Sedgwick County District Court seeking damages from Brundage-Bone for injuries and damages caused by its negligence in operating a concrete pumping unit at a residential construction site accident in December 2008. The district court later denied Brundage-Bone's motion to dismiss, which argued Fyler's claim was barred by the statue of limitations. The parties participated in mediation where Brundage-Bone agreed to pay Fyler $50,000. The parties acknowledged that Brundage-Bone had to obtain "formal approval" to pay the claim. The settlement notes from the mediator stated Brundage-Bone's counsel had "oral authorization from the [bankruptcy] trustee" and would "take all actions necessary to expedite payment."

After mediation, Fyler submitted a proposed journal entry of judgment to Brundage-Bone that required Brundage-Bone to make a direct cash payment to Fyler. Brundage-Bone refused to sign and submitted a competing stipulation of release and settlement of claim. In response, Fyler filed a motion to enforce settlement, alleging that Brundage-Bone would not consent to its proposed journal entry or " 'take all actions necessary to expedite payment.' " Brundage-Bone then filed a motion in opposition of Fyler's motion and a counter-motion to enforce the settlement that claimed Fyler's motion violated the ADR order. Specifically, Brundage-Bone argued the district court lacked jurisdiction to enforce Fyler's motion because the settlement only provided Fyler with a general unsecured claim against the bankruptcy estate for $50,000 subject to the bankruptcy court's approval.

The district court took evidence on the matter. The district court heard testimony from Dennis Gillen, the mediator who negotiated the settlement. The district court granted Fyler's motion, ruling that the settlement terms did not provide for a general unsecured claim against Brundage-Bone's bankruptcy estate. Instead, the district court ordered the settlement required Brundage-Bone to take all the necessary steps with the bankruptcy trustee to expedite a

direct $50,000 cash payment to Fyler through the bankruptcy court.

In this appeal, Brundage-Bone argues the district court exceeded its jurisdiction under the terms of the ·controlling ADR order when it ruled the mediation settlement terms required Brundage-Bone to ask the bankruptcy trustee to make a direct $50,000 cash payment to Fyler instead of liquidating Fyler's tort claim as a general unsecured claim.

*We state our standard of review.*

Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *Associated Wholesale Grocers, Inc. v. Americold Corporation,* 293 Kan. 633, 637, 270 P.3d 1074 (2011). In addition, the legal effect of·a written instrument is a question of law. Because the settlement between the parties here was a written agreement it may be construed and its legal effect determined by this court regardless of the construction made by the district court. See *Osterhaus v. Toth,* 291 Kan. 759, 768, 249 P.3d 888 (2011). Finally, to the extent this appeal involves statutory interpretation this court has unlimited review. *Unruh v. Purina Mills,* 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

*A review of some bankruptcy principles is helpful.*

The primary purpose of the United States Bankruptcy Code is the collection and equitable distribution of the debtor's estate to its creditors. *Dalton Dev. Project #1 v. Unsecured Creditors Comm.,* 948 F.2d 678, 682 (10th Cir. 1991). Chapter 11 of the Bankruptcy Code authorizes reorganization of any assets held by the debtor (usually a business) rather than liquidation under Chapter 7.

The Bankruptcy Code provides for an automatic stay of all proceedings against the debtor the moment the bankruptcy petition is filed, irrespective of notice. 11 U.S.C. § 362(a); see *United Northwest Fed'l Credit Union v. Arens,* 233 Kan. 514, 516, 664 P.2d 811 (1983). The purpose of the automatic stay is to protect the debtor and its creditors by allowing the debtor to organize its affairs and ensuring that the bankruptcy procedure provides an orderly reso-

lution of all claims. The stay terminates automatically when the bankruptcy case is closed or dismissed. 11 U.S.C. § 362(c)(2). Section 362(d), however, provides relief from the automatic stay upon a showing for cause before the bankruptcy court by terminating, annulling, modifying, or conditioning of the stay. See *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987).

At the end of these proceedings, 11 U.S.C. § 1141(d)(1) (2006) states that confirmation of a reorganization plan discharges the debtor of any debt that arose before the date of confirmation and replaces the automatic stay with a permanent injunction under 11 U.S.C. § 524 (2006). Our Kansas Supreme Court has recognized "the provisions of a confirmed plan [under 11 U.S.C. § 1141(a)] bind the debtor and any creditor whether or not such creditor has accepted the plan." *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, Syl. ¶ 6, 58 P.3d 1284 (2002). Going further, a discharge injunction under § 524 voids any judgment "to the extent that such judgment is a determination of the personal liability of the debtor with respect to [a discharged] debt" and operates as an injunction against any effort to collect "any such debt as a personal liability of the debtor." 11 U.S.C. §§ 524(a)(1) and (2).

*We note two controlling orders of the bankruptcy court.*

Brundage-Bone's Chapter 11 petition operated as an automatic stay of all pending legal actions or those that could be taken against it. Therefore, Fyler was required to seek relief under § 362(d) to proceed with his tort claim before the bankruptcy case was either closed, dismissed, or Brundage-Bone was discharged by the bankruptcy court. See *Becker v. Becker*, 28 Kan. App. 2d 616, 620, 19 P.3d 794, *rev. denied* 271 Kan. 635 (2001). The bankruptcy court granted a request for such relief to allow Fyler to file his tort claim in Kansas. In granting relief, the bankruptcy court's order lifting the automatic stay reiterated, "Mr. Fyler's Tort Claim shall remain subject to the applicable provisions of the ADR Order."

The ADR order approved and incorporated a document entitled "MANDATORY ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR TORT CLAIMS." Section I of the ADR procedures warns all holders of tort claims against Brundage-Bone

that failure to comply with the ADR procedures "may result in the disallowance of your Tort Claim." Section V contains two relevant subsections.

First, subsection C(3) entitled "Recovery on Any Judgment" provides:

"Upon termination of the automatic stay, [Fyler] may prosecute to judgment a Tort Claim in a court of competent jurisdiction. Enforcement of any judgment by [Fyler] against [Brundage-Bone], however, shall take place only before the Bankruptcy Court pursuant to the terms of any chapter 11 plan or plans confirmed in [Brundage-Bone's] chapter 11 cases."

Second, subsection F, called "Payment of Any Settlement or Judgment and Bankruptcy Court Approval", provides:

"To the extent [Brundage-Bone's] insurance policies are not available to pay the amount of such settlement or judgment, *you will not receive a cash payment but only an allowed general unsecured claim* in [Brundage-Bone's] estates to be treated and paid pursuant to a confirmed chapter 11 plan.

"Specifically, payment . . . shall be governed by the following procedures:

"1. To the extent not paid from insurance, *payment of any settlement of or judgment on a Tort Claim against [Brundage] shall be in the form of an allowed general unsecured claim* (the 'GUC') to be paid in the amount and form as set forth in a plan or plans confirmed in [Brundage-Bone's] chapter 11 cases.

"2. [Brundage] and [Fyler] shall enter into a stipulation, agreement and order ('Allowed Claim Stipulation') allowing the GUC in the amount of the deficiency between any settlement or judgment on a Tort Claim against the Debtor and the amount of available insurance coverage.

. . . .

"4. Bankruptcy Court approval pursuant to Fed. R. Bankr. P. 9019 will be required for any Allowed Claim Stipulation. The Allowed Claim Stipulation may be approved and entered by the Bankruptcy Court if a written objection thereto is not timely interposed." (Emphasis added.)

*We examine the question of jurisdiction of the Kansas district court.*

We must point out initially that Brundage-Bone claims the bankruptcy court confirmed a plan of reorganization and that all debts except those paid under the plan were discharged. Nothing in the record on appeal indicates the bankruptcy court entered a discharge injunction. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *National Bank of Andover v. Kansas*

*Bankers Surety Co.*, 290 Kan. 247, 283, 225 P.3d 707 (2010). We are not persuaded by this contention.

In addition, Brundage-Bone did not raise this specific argument of discharge before the district court. Issues not raised before the district court cannot be raised on appeal. *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009). Consequently, Brundage-Bone cannot state a claim for a violation of § 524 of the Bankruptcy Code. See *In re Houlik*, 481 B.R. 661, 672 (10th Cir. 2012), where the court held that a discharge is necessary to give rise to the § 524(a)(2) discharge injunction.

Notwithstanding that line of argument, we are persuaded that Brundage-Bone raises a valid argument over jurisdiction. In *United Northwest*, the Kansas Supreme Court held that the district court was *without jurisdiction* to enter a default judgment in a mortgage foreclosure action because the appellees filed their lawsuit *in violation of the automatic stay* after the Chapter 7 bankruptcy petition was filed. 233 Kan. at 516.

The federal preemption of all bankruptcy matters imposes an order to court authority here. "By respecting the automatic stay, a state court helps to insure the orderly and fair administration of the debtor's estate in the bankruptcy proceeding." *Ace Tile Co., Inc. v. Casson Const. Co., Inc.*, 715 P.2d 344, 346 (Colo. App. 1986). This principle was recognized by the *United Northwest* court when it ruled: "It is settled that acts done in violation of the stay are 'void and without effect.' [Citation omitted.]" 233 Kan. at 516.

We see no difference between the significance of an automatic stay order issued in accordance with a Chapter 7 bankruptcy filing and an ADR order issued by the bankruptcy court in a Chapter 11 proceeding that limits what can be done in state court concerning *payment of any settlement of or judgment on a tort claim.* Here, the ADR order against Brundage-Bone clearly limited claims to "allowed general unsecured claims." The district court could not go beyond the bounds established by the bankruptcy court in its ADR order. The ADR order is simply a manifestation of the stay order that permits only limited actions by creditors, debtors, and state courts. In other words, the district court here could determine

the amount of Fyler's claim but could not issue an order to enforce a settlement that contradicts the ADR order.

We have examined the district court's words on the subject both written and oral. The district court's minute sheet reads:

"Court finds settlement should be enforced. Settlement terms included a $50,000 cash payment, approved by the bankruptcy [trustee], from defendant Brundage [*sic*] to Plaintiff. Defendant is ordered to take the necessary steps to submit the [Trustee's] approval of settlement as soon as practicable."

During his remarks from the bench, the judge stated:

"[W]ith respect to the enforcement of the order, the court is going to order that the defendant Brundage-Bone take any necessary steps to present this matter to the trustee for payment as a cash payment *and not as a general unsecured liability* or credit that the plaintiff may have, and that will be the order of the court." (Emphasis added.)

That order is in direct contravention of the ADR order. The clear meaning of the federal order is that after the amount of the tort claim is determined the debtor and creditor are governed exclusively by the orders of the bankruptcy court. Also, we must point out that there is no bankruptcy trustee in this case. Brundage-Bone is known as a "debtor in possession" because this involves a Chapter 11 reorganization.

The district court had no authority to direct Brundage-Bone to present this matter "as a cash payment and not as a general unsecured liability." If we were to rule otherwise, a state court could modify any order of the bankruptcy court and interfere with the orderly and fair administration of the bankrupt's estate. We reiterate, the bankruptcy court was dealing with somewhere between 1,000 and 5,000 creditors.

*We turn now to Fyler's contentions.*

We are not persuaded by Fyler's argument that we should somehow construe the value of his claim to be $300,000 so Brundage-Bone's insurance carrier could pay the $50,000. This court has no authority to modify the terms of the agreement, especially in the absence of anything in the record that remotely suggests the claim is in that amount, or that the parties agreed to such terms.

Next, Fyler's contention that the ADR order can be bypassed via an administrative convenience settlement offer seems to be clutching at straws. Indeed, a section of the ADR order permits debtors, if they believe it is economically beneficial and administratively convenient, to waive certain claimants' requirement to complete a confirmation of loss form. But that does not mean that Brundage-Bone can pay a separate claim outside of the confines of the ADR order. To interpret that procedure in such a fashion would mean that the debtor is free to pay such claims in a fashion not in compliance with any plan and without bankruptcy court approval.

Also, Section V(F) of those procedures clearly states:

"If you hold a Tort Claim . . . read the following carefully. To the extent the Debtors' insurance policies are not available to pay the amount of such settlement or judgment, you will not receive a cash payment but only an allowed general unsecured claim in the Debtors' estates to be treated and paid pursuant to a confirmed Chapter 11 plan."

We see no back door in the administrative convenience settlement offer procedures here that allows Fyler to escape the confines of the bankruptcy court's ADR order.

Fyler did not assert any of these arguments regarding the settlement before the district court. Issues not raised before the trial court cannot be raised on appeal. *In re Care & Treatment of Miller*, 289 Kan. at 224-25.

As a final point, we note that if the district court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *Friedman v. Kansas State Bd. of Healing Arts*, 287 Kan. 749, 752, 199 P.3d 781 (2009).

We hold the district court was without jurisdiction to order Brundage-Bone to submit this $50,000 claim as anything other than a general unsecured claim as described in the bankruptcy court's ADR order.

We reverse the judgment of the district court and remand for further proceedings.