(311 P.3d 1139)
No. 108,758

JAMES AND SHARON SMITH, *Appellees*, v. OLIVER HEIGHTS, LLC, *Appellant*, and BOARD OF COUNTY COMMISSIONERS, ATCHISON COUNTY, KANSAS, *Appellee*.

Opinion filed September 6, 2013.

*Charles T. Engel* and *Gage A. Rohlf*, of Engel Law, P.A., of Topeka, for appellant.

*John W. Fresh*, of Larry R. Mears, Chartered, of Atchison, for appellees James and Sharon Smith.

Before BRUNS, P.J., HILL, J., and ERNEST L. JOHNSON, District Judge Retired, assigned.

BRUNS, J.: Oliver Heights, LLC entered into an installment contract for sale of real estate with James and Sharon Smith. Less than 2 years later, Oliver Heights filed for Chapter 11 bankruptcy, and a reorganization plan was confirmed by the bankruptcy court. Subsequently, the Smiths filed a foreclosure action in state court alleging that Oliver Heights defaulted under the terms of both the installment contract and the reorganization plan.

After a bench trial, the district court found that Oliver Heights was in default, that the Smiths had given adequate notice of the default to Oliver Heights, and that the Smiths had not waived their rights by accepting an untimely payment. Moreover, the district court ordered that possession of the real property be immediately returned to the Smiths and granted a judgment for damages against Oliver Heights in the amount of $3,000. Thereafter, Oliver Heights timely appealed.

On appeal, we find substantial evidence to support the district court's findings on the issues of default, notice, and waiver. But we find that the confirmed reorganization plan created an equitable mortgage, which is subject to foreclosure and a right of redemption

under Kansas law. Accordingly, we affirm the district court's decision in part, reverse it in part, and remand this case to the district court for further proceedings.

## FACTS

On August 13, 2009, the Smiths entered into an installment contract for sale of real estate in which they agreed to sell Oliver Heights certain real property located in Atchison, Kansas, for the sum of $120,000. The installment contract required Oliver Heights to make 120 monthly payments in the amount of $577.92 to the Smiths. In addition, the installment contract required Oliver Heights to make a lump-sum payment of $60,000 to the Smiths on September 1, 2019.

In an Addendum to the installment contract, the parties agreed:

"Upon execution hereof, [the Smiths] shall execute a General Warranty Deed to the subject property, in which [the Smiths] shall be grantor and [Oliver Heights] shall be grantee, and said Deed shall be held by [the Smiths' attorney], until the full performance of this Agreement by the parties, whereupon the same shall be delivered to [Oliver Heights]."

On December 1, 2010, Oliver Heights filed for Chapter 11 bankruptcy protection in federal court. See 11 U.S.C. § 1129 (2006). After negotiating with its creditors, Oliver Heights submitted a final reorganization plan that was confirmed by the United States Bankruptcy Court. Under the confirmed reorganization plan, Oliver Heights was to retain possession of the real property it was purchasing from the Smiths—subject to any liens. Likewise, the reorganization plan recognized that the Smiths held "legal title" to the real property and they were to retain their interest in it to the extent of any outstanding balance owed to them by Oliver Heights.

The confirmed reorganization plan required Oliver Heights to continue to pay the Smiths $577.92 per month until September 1, 2019, when a lump-sum payment of $60,000 would become due. Moreover, Oliver Heights was to pay the Smiths an additional sum of $150 per month for 33 months. The reorganization plan also obligated Oliver Heights to keep property taxes current and to maintain insurance on the real property.

In addition to the specific terms relating to the sale of the real property by the Smiths to Oliver Heights, the confirmed reorganization plan included a general provision—which was applicable to all secured creditors—entitled "Means for Execution of the Plan." This provision stated that "[i]f at any time [Oliver Heights] is unable to make payments as they become due to any secured creditor, [it] will surrender the collateral to satisfy the indebtedness to that creditor in lieu of the payments as outlined within this Plan." Furthermore, this provision gave Oliver Heights 30 days from the date a payment was due in which to cure any default.

On April 6, 2012, the Smiths filed a petition in state court naming Oliver Heights and Atchison County as defendants. In the petition, the Smiths alleged that Oliver Heights defaulted under both the installment sale contract and the confirmed reorganization plan by failing to timely make installment payments, by failing to keep the property taxes current, and by failing to keep the real property insured. According to the petition, it also named Atchison County as a party because it held a lien on the real property for "unpaid real estate taxes" for several years.

In the petition, the Smiths explicitly requested that any rights or interest that Oliver Heights held in the real property "should be forthwith foreclosed as provided by law, and any amount found due" to them from Oliver Heights "should be decreed a first and prior lien on all of said real estate." Likewise, the petition alleged "[t]hat less than one-third (⅓rd) of the original amount advanced has been paid, and that therefore any redemption period herein should not exceed three (3) months." The petition, however, did not include a request for immediate possession of the property or a demand for a monetary judgment.

Oliver Heights filed an answer to the petition, asserting that it had kept the property taxes current and had kept the real property insured. But the answer did not assert waiver as an affirmative defense. Likewise, the final pretrial order entered by the district court did not list waiver as an affirmative defense. After denying Oliver Heights' motion for summary judgment, the district court conducted a bench trial on August 29, 2012.

Following the trial, the district court filed a memorandum decision in which it found that Oliver Heights was in default under the terms of the real estate installment contract and the reorganization plan for failing to make timely installment payments to the Smiths and for failing to keep the property taxes current. The district court also found that the Smiths had given sufficient notice of default to Oliver Heights. But rather than granting the remedy of foreclosure as requested by the Smiths in their petition, the district court granted the Smiths immediate possession of the real property, purportedly under the terms of the installment sale contract, and entered a monetary judgment against Oliver Heights in the amount of $3,000.

## ANALYSIS

### Chapter 11 Reorganization Plan

On appeal, we must first determine the effect of the Chapter 11 reorganization plan confirmed by the bankruptcy court on the legal rights and responsibilities of the parties in this case. As a general rule, "Chapter 11 of the Bankruptcy Code authorizes reorganization of any assets [and debts of] the debtor (usually a business) rather than liquidation under Chapter 7." *Fyler v. Brundage-Bone Concrete Pumping, Inc.*, 48 Kan. App. 2d 615, 618, 297 P.3d 1180 (2013). Furthermore, as the Kansas Supreme Court has found: "[T]he provisions of a confirmed plan [under 11 U.S.C. § 1141(a) (2006)] bind the debtor and any creditor whether or not such creditor has accepted the plan." *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, Syl. ¶ 6, 58 P.3d 1284 (2002).

"[T]he confirmation of a [Chapter 11] plan . . . discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A) (2006). "[T]he effect of confirmation is to discharge the entire preconfirmation debt, replacing it with a new indebtedness as provided in the confirmed plan; the plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his [or her] preconfirmation creditors." *In re Consumers Realty & Development Co., Inc.*, 238 B.R. 418, 425 (B.A.P. 8th Cir. 1999) (citing *In re Ernst*, 45 B.R. 700, 702 [Bankr. D. Minn. 1985]). In other words, "[a] confirmed plan

of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002); see also *In re Clay*, No. 09-80909-TRC, 2010 WL 547165, at *2 (Bankr. E.D. Okla. 2010) ("It is well-settled that a confirmed plan creates a new contract between the debtor and interested parties, which replaces pre-petition obligations with a new contractual obligation in accordance with the creditor's treatment under the confirmed plan.").

It is important to recognize that "[t]he underlying creditors' rights asserted in bankruptcy proceedings are creatures of state law." *Paul v. Monts*, 906 F.2d 1468, 1475 (10th Cir. 1990) (citing *In re Elcona Homes Corp.*, 863 F.2d 483, 486 [7th Cir. 1988]). Consequently, the use of state court remedies to enforce a confirmed reorganization plan is proper. 906 F.2d at 1476 ("The availability of alternative remedies [under the bankruptcy code] does not persuade us that those remedies are exclusive."). Thus, a confirmed reorganization plan establishes a new contractual obligation that is enforceable in state court. *Waterview Resolution Corp.*, 274 Kan. at 1029-30; see also *Van Sickle v. Hallmark & Associates, Inc.*, 744 N.W.2d 532, 536 (N.D. 2008).

In the present case, the Smiths negotiated with Oliver Heights and ultimately withdrew their objection to the provisions of the reorganization plan confirmed by the bankruptcy court that related to the sale of the real property in question. Accordingly, we find that the confirmed reorganization plan controls the rights as well as the obligations of the Smiths and Oliver Heights in this case. Furthermore, we find that the remedies available under Kansas law may be used to enforce the rights and obligations of the parties under the terms of the confirmed reorganization plan.

*Default, Notice, and Waiver*

"The legal effect of a written instrument is a question of law." *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011) (If the terms of the written instrument are clear, "the intent of the parties is to be determined from the language of the [instrument] without applying rules of construction."). Because a Chapter 11 reorgani-

zation plan confirmed by a bankruptcy court creates a new contractual obligation, our interpretation of such plans is a question of law subject to unlimited review. See *In re Davis Offshore, L.P.*, 644 F.3d 259, 263 (5th Cir.) ("This court interprets the terms of a bankruptcy reorganization plan and confirmation order de novo and holistically."), *cert. denied* 132 S. Ct. 782, 181 L. Ed. 2d 488 (2011); *In re Shenango Group Inc.*, 501 F.3d 338, 344-45 (3d Cir. 2007) ("In construing a confirmed plan of reorganization, we apply contract principles. . . . [W]e exercise plenary review.").

Whether a party has defaulted on a contractual obligation is a question of fact, and we review a district court's findings of fact to determine whether they are supported by substantial competent evidence. See *Hall v. Ford Motor Credit Co.*, 292 Kan. 176, 181-82, 254 P.3d 526 (2011); *Carpenter v. Riley*, 234 Kan. 758, 764-65, 675 P.2d 900 (1984). In reviewing the record to determine whether a factual finding is supported by substantial competent evidence, we do not reweigh the evidence nor do we evaluate witness credibility. *Progressive Products, Inc. v. Swartz*, 292 Kan. 947, 955, 258 P.3d 969 (2011). But we review the legal conclusions based on those facts de novo. *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009).

Here, the reorganization plan confirmed by the bankruptcy court provides:

"If at any time the Debtor is unable to make payments as they become due to any secured creditor, the Debtor will surrender the collateral to satisfy the indebtedness to that creditor in lieu of the payments as outlined within this Plan. Should the Debtor be unable to make a Plan payment as it becomes due to any secured creditor, the Debtor shall have thirty (30) days from the date the Plan payment is due in which to cure the default under the Plan."

At trial, one of the members of Oliver Heights admitted that the installment payment due on January 9 or 10, 2012, was not made to the Smiths until February 24, 2012. Under the plain and unambiguous language of the confirmed reorganization plan, the failure to make the January 2012 payment in a timely manner constituted a default that Oliver Heights failed to cure within the 30-day grace period allowed by the plan. Nevertheless, Oliver Heights contends on appeal that the Smiths failed to give it proper notice

of the default and that they waived their right to assert default by accepting the untimely payment.

Oliver Heights argues that the Smiths did not send written notice of the default in the manner required by the installment sale contract. But as indicated above, the confirmed reorganization plan is essentially a new and binding contract that replaces the preconfirmation contract entered into by the parties. See *In re Consumers Realty & Development Co., Inc.,* 238 B.R. at 425. Although the installment sale contract required written notice of default be sent to Oliver Heights and Robert Campbell, the reorganization plan did not contain such a requirement.

At trial, testimony was presented to establish that the Smiths gave notice of the default to Oliver Heights' bankruptcy attorney. Moreover, the bankruptcy attorney testified that it was his normal practice to forward the notice of default to his client and that he might also have called them to discuss the matter. Thus, we find that there is substantial evidence in the record to support the legal conclusion that the Smiths gave sufficient notice of the default to Oliver Heights.

Oliver Heights also argues that even if appropriate notice was given, the Smiths waived their rights by accepting the January 2012 payment more than 30 days after it was due. In Kansas, waiver is an affirmative defense that the party asserting bears the burden of proving. *Lyons v. Holder,* 38 Kan. App. 2d 131, 139, 163 P.3d 343 (2007); see *Foundation Property Investments v. CTP,* 286 Kan. 597, Syl. ¶ 7, 186 P.3d 766 (2008). Furthermore, affirmative defenses—including waiver—must be set forth in an answer or other responsive pleading. See K.S.A. 2012 Supp. 60-208(c)(1)(Q) ("In responding to a pleading, a party *must* affirmatively state . . . waiver.") (Emphasis added.); *Brooker v. Brooker,* 214 Kan. 89, 96-97, 519 P.2d 612 (1974).

A review of the record reveals that trial counsel for Oliver Heights did not assert waiver as an affirmative defense in its answer. Likewise, waiver is not even listed as an affirmative defense in the final pretrial order. Although Oliver Heights' trial counsel argued during closing argument that late payments were accepted "without any problem" by the Smiths, we find this argument to be

too little too late. Because waiver is an affirmative defense that a party must assert in an answer or other responsive pleading, we find that Oliver Heights failed to properly assert this affirmative defense before the district court, and, as such, we will not decide the issue of waiver on appeal. See *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009).

Although we conclude that there is substantial evidence in the record to support the district court's finding that Oliver Heights defaulted on the terms of the confirmed reorganization plan because of the late payment made in January 2012, we also conclude that there is substantial evidence to support the finding that Oliver Heights failed to keep the taxes on the real property current. We note that Article VII of the reorganization plan states: "[T]axes . . . shall be paid as they become due." Additionally, in the portion of the reorganization plan related to the Smiths, the plan states that Oliver Heights "shall keep current real estate property taxes . . . ."

Under K.S.A. 2012 Supp. 79-2004(a), a taxpayer can pay "at such person's option, the full amount [owed] on or before December 20 of each year, or ½ [owed] on or before December 20 and the remaining ½ on or before May 10 next ensuing." If the taxpayer fails to pay at least the first half of the taxes by December 20, then that first half accrues interest until the full amount is paid. Any tax obligation that remains unpaid on May 11 accrues interest until the obligation is paid in full or the property is sold in foreclosure. See K.S.A. 2012 Supp. 79-2004(a).

Accordingly, we find that the plain and unambiguous language of the confirmed reorganization plan required Oliver Heights to pay the property taxes when they became due. In reality, the taxes at issue became due on November 1, 2011, but they were not payable until December 20, 2011. See K.S.A. 79-1804; *In re Prairie Mining, Inc.*, 194 B.R. 248, 253 (Bankr. D. Kan. 1995). Regardless, Oliver Heights conceded that it did not pay the first half of the property taxes by December 20, 2011.

Ultimately, Oliver Heights paid the entirety of the property tax obligation—including the accrued interest on the first half—on May 3, 2012, which was nearly a month after this action was filed. Although Oliver Heights had the right to elect to either pay one-

half of the property taxes or the entire amount in December 2011, paying nothing at that time was not an option under the terms of the reorganization plan. Consequently, when Oliver Heights failed to pay any of the property taxes in December, it defaulted under the plain and unambiguous terms of the reorganization plan because it failed to keep the property taxes current or pay them as they became due.

Additionally, Oliver Heights claims that it did not default on its obligations because the real property was never subject to foreclosure for failure to pay taxes. But the obligation to keep the taxes current and to pay them as they became due under the reorganization plan was not contingent upon whether the property was subject to foreclosure. Thus, we conclude that the district court did not err in finding Oliver Heights in default of the reorganization plan for failure to keep taxes current or pay them when they became due.

In sum, we find substantial competent evidence to support the district court's factual finding that Oliver Heights was in default of the reorganization plan for failing to make timely payments and for failing to keep taxes current. We also find Oliver Heights' arguments regarding notice to be unpersuasive, and we do not consider its argument regarding waiver. We, therefore, affirm the decision of the district court on the issues of default, notice, and waiver.

## Remedy for Default

In their petition, the Smiths requested that the rights and interest of Oliver Heights in the real property "be forthwith *foreclosed* as provided by law." (Emphasis added.) And that because "less than one-third (⅓rd) of the original amount advanced has been paid . . . any *redemption period* herein should not exceed three (3) months." (Emphasis added.) Notwithstanding the Smiths' request, the district court did not enter an order of foreclosure or establish a period of redemption. Instead, the district court granted the Smiths immediate possession of the property—evidently under the terms of the installment sale contract—and entered a monetary judgment against Oliver Heights in the amount of $3,000. We find these remedies to be error first because the reorganization plan—

not the installment sale contract—controlled the rights and obligations of the parties and second because the reorganization plan created an equitable mortgage subject to foreclosure.

In Kansas, an equitable mortgage is created when the parties intend "to charge real property as a security for an obligation." *Garnett State Savings Bank v. Tush*, 232 Kan. 447, Syl. ¶ 3, 657 P.2d 508 (1983); see also *Fuqua v. Hanson*, 222 Kan. 653, Syl. ¶ 1, 567 P.2d 862 (1977); *Hill v. Hill*, 185 Kan. 389, 396-97, 345 P.2d 1015 (1959). When, pursuant to a contract for the sale of real estate, a seller retains legal title to property as security for the purchase price and the purchaser takes possession of the property, "the seller has no greater rights than he would possess if he had conveyed the property and taken back a mortgage." *Roberts v. Osburn*, 3 Kan. App. 2d 90, Syl. ¶ 5, 589 P.2d 985, *rev. denied* 225 Kan. 845 (1979).

Here, the confirmed reorganization plan clearly provides for the installment sale of real property from the Smiths to Oliver Heights. Moreover, the reorganization plan provides that the real property is to serve as security for the indebtedness—with the Smiths continuing to hold "legal title" to the property—to the extent of the outstanding balance of the indebtedness. Accordingly, we conclude that the terms of the confirmed reorganization plan are sufficient to establish an equitable mortgage in the real property.

In light of the existence of an equitable mortgage, we find that the appropriate remedy for Oliver Heights' default is foreclosure, subject to the applicable redemption rights under K.S.A. 2012 Supp. 60-2414. See *Pine v. Pittman*, 211 Kan. 380, 386, 506 P.2d 1184 (1973) ("As contract purchasers, the appellees were the equitable owners of the premises and had an interest therein which was substantial so as to secure to them the right of redemption as guaranteed by K.S.A. 60-2414(a)."). Based on a review of the record, it is apparent that Oliver Heights has not yet paid ⅓ of the purchase price for the real property. Oliver Heights would be entitled to a 3-month redemption period under K.S.A. 2012 Supp. 60-2414(m). We, therefore, conclude that the appropriate remedy for the default by Oliver Heights would be foreclosure with a 3-

month redemption period—which is the remedy sought by the Smiths in the first place.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.