NOT DESIGNATED FOR PUBLICATION

No. 120,933

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TONN FAMILY LIMITED AGRICULTURAL PARTNERSHIP d/b/a SATCHEL CREEK RANCH,
*Appellee/Cross-appellant*,

v.

WESTERN AGRICULTURAL INSURANCE COMPANY,
*Appellant/Cross-appellee*.


MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed March 19, 2021. Affirmed in part, reversed in part, and remanded with directions.

*Marc A. Powell*, of Powell Law Office, of Wichita, for appellant/cross-appellee.

*Roarke R. Gordon, Charles M. Millsap, Lyndon W. Vix,* and *Nathaniel T. Martens*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee/cross-appellant.


Before BRUNS, P.J., GREEN and ATCHESON, JJ.


PER CURIAM:  Western Agricultural Insurance Company (Western Ag) appeals after a jury rendered a verdict against it in a breach of contract action brought by the Tonn Family Limited Agriculture Partnership (Tonn Family) for the failure to pay a claim for hail damage under the terms of a property insurance policy. The Tonn Family also cross-appeals the district court's denial of its request for reimbursement of litigation expenses. Because we conclude the district court erred in awarding the Tonn Family prejudgment interest, we reverse on that issue and remand this case to the district court to reconsider the amount of reasonable attorney fees to be awarded in light of the reduction

1

in the amount of the judgment. However, we affirm the district court on all of the other issues presented by Western Ag in its appeal as well as on the issue presented by the Tonn Family in its cross-appeal. Finally, we award the Tonn Family reasonable attorney fees on appeal. Thus, we affirm in part, reverse in part, and remand with directions.

FACTS

Most of the underlying facts are undisputed. In particular, the parties do not dispute that the clay tiles on the roofs of the Tonn Family's residences and other structures were broken or cracked. However, the parties disagree as to what caused the damage to the roof tiles. On the one hand, the Tonn Family claims that a hailstorm caused the damage to the clay tiles. On the other hand, Western Ag suggests that the clay tiles were damaged by people walking on the roofs at some point in time prior to the alleged hailstorm.

The Tonn Family has owned the Satchel Creek Ranch in Butler County since 1984. Tiya Tonn-Oppold is the general partner of the family partnership and her four adult children are also partners. The Satchel Creek Ranch is comprised of multiple structures. These structures include two houses—the main house that Tiya lives in and another house in which her son Ty resides. In addition, there are two bunkhouses and a number of other outbuildings, including two Quonset huts, a generator shed, and a horse barn.

The roofs of the two houses and the generator shed have Ludowici clay tiles while the roofs of the other structures are made out of a variety of roofing materials. The clay tiles are described in the record as being historic and rare. At all times relevant to the issues presented in this appeal, the ranch was insured under an "AgMax" Commercial Package Policy issued by Western Ag—a Farm Bureau company—which covered the

buildings located on the property and their contents. Significantly, the Western Ag policy includes coverage for losses caused by wind and hail.

Under the Western Ag policy, the insurer agreed to replace the damaged portion of the buildings with materials "of like kind and quality," to pay the actual and necessary amount spent to repair or replace the damaged portion of the buildings, or to pay the policy limits. There were also various policy restrictions. These restrictions will be discussed in the analysis portion of our opinion to the extent they are material to the issues presented on appeal.

Although the parties dispute whether the Tonn Family's ranch suffered hail damage, it is agreed that a "major" or "intense" thunderstorm struck Butler County on the night of April 2, 2015, and continued into the early morning hours of April 3, 2015. According to Tiya, she got out of bed during the middle of the night thinking that there was a tornado. Tiya testified at trial that after she arose, she observed hail hitting the property. In addition, Tiya's son testified that he went outside and observed golf-ball-sized hail on the ground.

Subsequently, Tiya notified her insurance agent that the ranch had been damaged during the storm. In response to the Tonn Family's claim, Western Ag assigned an adjustor, Darin Messerli, to inspect the damage to the ranch. Prior to inspecting the property, Messerli contacted Jack Burks from Eaton Roofing and asked him for assistance. According to Messerli, he requested Burks' assistance because he was more familiar with clay tile roofs. Also, Messerli did not want to walk on the roof himself due to his size and the possibility of breaking the clay tiles.

On May 21, 2015, Messerli and Burks met at the Satchel Creek Ranch to evaluate the damage allegedly caused by the storm. While Messerli looked at the interior of the main house, Burks examined the clay tile roofs of the two residences located on the

3

ranch. Walking on the roof of the main house, Burks saw cracks in several of the clay tiles. Unfortunately, a few of the tiles also broke while Burks was walking on the roof.

The parties dispute what Messerli and Burks told Tiya following the inspection. However, it is undisputed that Eaton Roofing subsequently submitted an estimate to Western Ag and the Tonn Family for the replacement of the clay tile roofs on June 8, 2015. Specifically, the estimate was in the amount of $468,453.72.

Messerli also noted leaking in a couple of locations in the main house. One of the locations was between two dormer windows, which was near the personal property that the Tonn Family ultimately claimed was damaged as a result of the ongoing leaking caused by the storm. According to Messerli, he was not told about water damage to personal property at the time he performed the inspection. However, he estimated the cost to repair the damage that he noted in the main house to be $886.01.

Following the inspection, Messerli requested that Burks have a crew install tarping to protect the area between the dormer windows. This involved several men walking on the roof and removing some of the tiles in order to install a water and ice shield. Messerli told his supervisor, Leonard Boys, about some of his concerns regarding the nature and extent of the damage caused by the storm. As a result, Boys took over as the adjustor on the claim and inspected the ranch on June 17, 2015.

According to Boys, he explained to Tiya and her son that Western Ag was obligated to replace the roofs "with functionally equivalent construction using current material and not for replacing with outdated or historic type tile." On June 22, 2015, Eaton Roofing submitted another estimate to replace the clay tile roofs in the amount of $230,281.27. Eaton Roofing indicated that the reason for the reduction in the estimate was that representatives of the company had found a modern clay tile that was "exactly like the old one."

Tiya also sought estimates for the replacement of the tile roofs. These estimates included one from Douglas Fry Roofing to replace the roofs for $378,963 and one from Rhoden Roofing to replace the clay tiles for $452,436. Rhoden Roofing later submitted a lower estimate—using modern Ludowici tiles—in the amount of $211,526.

After the second inspection, Boys researched the types of roofing materials that may be available to replace the clay tile roofs at the ranch. In doing so, he confirmed that the manufacture of the original clay tiles had been discontinued. However, he found that there were a limited number of these tiles available for partial repairs. Boys also learned that Custom Tile Roofing in Colorado had similar products available. In turn, Eaton Roofing submitted a third estimate to Western Ag for a partial roof replacement at the Tonn Family ranch using the similar clay tiles from Colorado in place of all of the cracked tiles at an estimated cost of $14,628.75.

On June 23, 2015, Boys sent the Tonn Family a loss estimate for complete replacement of the two roofs—using "like kind and quality" materials—at a cost of $85,852.40. However, Boys indicated that this estimate was contingent on an engineer's inspection of the property and a determination that the damage was caused by hail. In addition, Boys sent Tiya a letter dated July 14, 2015, in which he confirmed that an engineering inspection would be required before a final decision could be made.

Western Ag retained Jonathan S. Goode, P.E., of Haag Engineering, to perform a forensic engineering consultation. On July 8, 2015, Goode came to Kansas to inspect the clay tile roofs at the Tonn Family's ranch. Following his inspection, Goode issued a report in which he opined that the clay tile roofs had not been damaged by wind or hail. Although Goode did not deny that the roofs had been affected by hail and wind over the years, he rendered the opinion that the damage he observed was not caused by hail of sufficient size or density to damage the clay tiles. In his report, Goode relied—at least in part—on a study published by his forensic engineering firm to conclude that the lateral

5

fractures to the clay tiles were caused by "foot traffic" rather than by hail. Relying on Goode's opinion, Western Ag denied the hail loss claim.

On June 10, 2016, the Tonn Family filed this action against Western Ag. In the petition, the Tonn Family asserted claims for breach of contract and negligence. Specifically, it alleged that Western Ag breached the terms of the insurance policy by denying coverage for the damages allegedly caused by hail. The negligence claim was based on a theory that Western Ag's failure to pay the claim in a timely manner resulted in additional damages to the Tonn Family's property as well as the fact that Western Ag's representatives were negligent when making temporary repairs. In its answer, Western Ag denied that it had breached the terms of the insurance policy or committed any acts of negligence. In particular, it relied on Goode's engineering report in asserting that the damage to the clay tile roofs was not caused by hail but by people occasionally walking on the roofs over the course of nearly 70 years.

During the pendency of this litigation, the Tonn Family hired Rhoden Roofing to replace the clay tile roofs on the ranch at a cost of $216,000. According to Tiya, although she wanted to preserve the historic character of the ranch by using tiles that were of like kind, she agreed to a less expensive alternative due to financial constraints and the uncertainty of the ongoing litigation. To pay for the replacement of the clay tile roofs, the Tonn Family obtained a $400,000 loan. The additional amount borrowed was used to add a three-season room onto Ty's house and is not material to the issues presented in this appeal.

The Tonn Family retained Wes Wright, P.E., of Semke Forensic, as an engineering consultant. Wright inspected the clay tile roofs at the ranch on June 30, 2016. He subsequently submitted a written report in which he opined that hail had caused the damage to both the roof on the main house and the roof on Ty's house. Wright noted that

he also found hail damage on the fiberglass skylights on the Quonset huts, on the asphalt roofs of the bunkhouses, and on the cedar shingle roof of the horse barn.

During the course of discovery, Western Ag retained Brian J. Heffernan, P.E., of HDHY Engineering, Inc., to perform another inspection of the clay tile roofs at the Tonn Family ranch. Heffernan performed his inspection on February 20, 2017, and subsequently submitted a written report. In his report, Heffernan noted evidence of hail damage on the metal flashings attached to the clay tile roofs, on the asphalt roofs of the bunkhouses, and on the cedar roofs on the horse barn. Nevertheless, he opined that most of the damage was due to foot traffic over the years and not due to a specific event such as a hailstorm.

In preparation for trial in 2017, Tiya answered written interrogatories on behalf of the Tonn Family. In doing so, she stated that certain personal property had been damaged by water leaks caused by the storm in April 2015. Tiya was also questioned about the personal property damage claim in her deposition but was unable to give specifics at that time regarding what items were damaged. In the agreed pretrial order submitted by the parties and entered by the district court on March 8, 2018, the Tonn Family included a claim for "Personal Property" in the amount of $25,000.

Prior to trial, the parties filed several motions. Significant to this appeal, Western Ag filed a motion in limine to exclude the expert testimony of the Tonn Family's engineering expert. In the motion to exclude, Western Ag alleged that Wright did not have "the requisite knowledge and training on this subject matter to provide admissible opinions to a jury on the differences between hail damaged tiles and foot damaged tiles." The district court held a hearing and denied the motion.

The district court commenced a four-day jury trial on April 24, 2018. At trial, the Tonn Family presented the testimony of seven witnesses, including Tiya, Ty, Wright, and

Rhoden. In its defense, Western Ag presented the testimony of nine witnesses, including Goode, Messerli, Heffernan, and Boys. Over the course of the jury trial, more than 100 exhibits were admitted into evidence. After deliberation, the jury unanimously found in favor of the Tonn Family and awarded $514,780 in damages for breach of contract and $50,000 in damages for negligence. After the trial, the Tonn Family agreed that the $50,000 award was duplicative, and the district court reduced the amount of the verdict accordingly.

The parties also filed various posttrial motions. In particular, the Tonn Family filed a motion for prejudgment interest and a motion for attorney fees. Western Ag filed a motion for a new trial and a motion to alter or reduce the amount of the judgment. Ultimately, the district court awarded the Tonn Family prejudgment interest in the amount of $145,822.30 and attorney fees in the amount of $378,818.27 plus $1,650.42 for court costs. However, the district court did not allow the Tonn Family to recover its expert witness fees.

On February 2, 2019, Western Ag filed its initial notice of appeal, which it labeled as premature. At the time the notice was filed, the Tonn Family's motion for attorney fees and expenses was still pending before the district court. On March 14, 2019, the district court entered a journal entry resolving the remaining posttrial issues. The next day, Western Ag filed an "[u]pdated" notice of appeal. This notice referenced the rulings as set forth in the original notice of appeal as well as a new issue relating to the district court's ruling on attorney fees and expenses. Western Ag filed a docketing statement on March 21, 2019. Furthermore, the Tonn Family filed a cross-appeal from the district court's denial of its request for expenses on March 28, 2019.

ANALYSIS

*Docketing of Appeal Out-of-Time*

At the outset, we note that the Tonn Family challenges this court's jurisdiction over the issues arising out of the trial. Specifically, the Tonn Family contends that Western Ag "abandoned" its right to challenge any issue other than the issue of attorney fees, expenses, and costs. In support of this contention, the Tonn Family argues that Western Ag failed to properly perfect the initial appeal because it did not file a docketing statement with our court within 21 days following the filing of its first notice of appeal. Upon scrutinizing the record on appeal, we find the Tonn Family's jurisdictional argument to be misplaced.

A review of the record reveals that the district court memorialized the verdict of the jury in a journal entry filed on August 8, 2018. Subsequently, Western Ag filed timely posttrial motions that stopped the appeal time from running. See *State v. Swafford*, 306 Kan. 537, 540, 394 P.3d 1188 (2017). On February 2, 2019, Western Ag filed a timely notice of appeal following the district court's denial of its posttrial motions. In its initial notice of appeal—which Western Ag labeled as "premature"—Western Ag appealed from the district court's pretrial ruling on its motion to exclude the Tonn Family's expert witness as well as from certain rulings made during the trial and the award of prejudgment interest. In addition to appealing from the journal entry entered by the district court on August 8, 2018, Western Ag also appealed from the district court's rulings on posttrial issues on January 4, 2019.

Western Ag asserts that it did not file a docketing statement within 21 days after the filing of its initial notice of appeal because the district court had not yet ruled on the Tonn Family's pending motion for attorney fees and costs. Nevertheless, on March 15, 2019—the day after the district court entered its journal entry on the outstanding motion

9

for attorney fees and costs—Western Ag filed an "[u]pdated" notice of appeal. In addition to appealing from the district court's ruling on the motion for attorney fees and costs, the second notice of appeal included all of the challenged rulings raised in the initial notice. Six days later, on March 21, 2019, Western Ag filed its docketing statement.

Prior to this court receiving the record on appeal, the parties raised the issue of appellate jurisdiction to the motions panel. On March 4, 2020, our motions panel issued an order, limiting the issues on appeal. However, after reviewing the record on appeal— which was filed on November 6, 2020—as well as the briefs filed by the parties, our motions panel determined that its order limiting the issues on appeal had been improvidently entered. As a result, our motions panel issued an order on February 3, 2021, withdrawing its previous order and deferring the jurisdictional issue to this panel for resolution.

It is important to recognize that the "obligation to timely docket an appeal arises from an appellate rule of this court rather than a statutory mandate." *Fowler v. State*, 37 Kan. App. 2d 477, 480, 154 P.3d 550 (2007). Likewise, K.S.A. 2020 Supp. 60-2103(a) provides that an appellant's failure "to take any of the further steps to secure the review of judgment appealed from [after the filing of a notice of appeal] does not affect the validity of the appeal" but instead may result in whatever remedy the appellate court "deems appropriate" under the circumstances presented.

We note that Kansas Supreme Court Rules 2.04(a)(1) (2018 Kan. S. Ct. R. 15) and 2.041(a) (2018 Kan. S. Ct. R. 17) were applicable at the time Western Ag filed its notices of appeal in this case. These rules provided that an appellant had 21 days to file a docketing statement with the Clerk of the Appellate Courts after the filing of a notice of appeal. Under the current rule that went into effect shortly after this appeal was docketed, an appellant now has 60 days from the filing of the notice of appeal to file a docketing statement. See Kansas Supreme Court Rule 2.04(a)(1) (2020 Kan. S. Ct. R. 15).

10

Although the Tonn Family cites us to the case of *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 789 P.2d 211 (1990), in support of its position, we find it to be distinguishable from the present case. In *Snodgrass*, the Kansas Supreme Court held that a request for statutory or contractual attorney fees typically does not prevent a judgment on the underlying merits from becoming a final and appealable order. In other words, an outstanding motion for attorney fees does not toll the time for appeal. 246 Kan. at 374. Here, of course, Western Ag did file timely notices of appeal from both the merits judgment and from the ruling on attorney fees and costs.

Unfortunately, Western Ag created unnecessary confusion by labeling its first notice of appeal as "premature" when in fact it was a timely notice as to the judgment on the merits as well as pretrial and trial issues. Regardless, we do not find this to be an issue of appellate jurisdiction. See *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, 151, 955 P.2d 1169 (1998). Instead, it is an issue of failing to comply with appellate court rules governing procedure. Because the obligation to file a timely docketing statement arises under our court rules, we exercise discretion in applying the rules as appropriate in this case. See *Fowler*, 37 Kan. App. 2d at 480-81.

As recognized in *Carson v. Eberth*, 3 Kan. App. 2d 183, 185, 592 P.2d 113 (1979), where an appellant fails to file a docketing statement in a timely manner, the appropriate remedy is for the appellee to file a motion to dismiss the appeal under Kansas Supreme Court Rule 5.05. In this case, the Tonn Family did not file a motion to dismiss the appeal but instead waited until filing its appellate brief before raising this issue. Consequently, both parties failed to comply with the appellate court rules relating to the procedure.

As noted above, the remedy to impose for failing to file a timely docketing statement is discretionary. See *Vorhees v. Baltazar*, 283 Kan. 389, 393, 153 P.3d 1227 (2007). Further, in exercising our discretion, we must keep in mind that the law favors the

11

resolution of legal disputes on the merits. See *McDaniel v. Southwestern Bell, Inc.*, 45 Kan. App. 2d 805, 809, 256 P.3d 872 (2011). Here, we find that Western Ag filed two timely notices of appeal based on the dates in which the respective judgments were entered by the district court. See K.S.A. 2020 Supp. 60-2103(a). Ultimately, Western Ag filed its docketing statement six days after filing its second or "[u]pdated" notice of appeal and 47 days after the initial notice of appeal was filed.

Under the circumstances presented, we do not find that Western Ag's failure to file a docketing statement within 21 days after the filing of the first notice of appeal to be prejudicial to the Tonn Family. Rather, we find that both parties have submitted briefs addressing the merits of the issues presented in the docketing statement. Thus, we exercise our discretion to address the issues presented by the parties on the merits.

*Motion in Limine to Exclude Expert Testimony*

Turning to the merits, we will first address the only issue involving a potential trial error: whether the district court erred in failing to exclude the testimony of the Tonn Family's engineering expert witness. Western Ag contends that the district court should not have allowed the Tonn Family's engineering expert to testify at trial regarding his opinions as to the cause of the damage to the clay tiles on the roofs of various structures on the ranch. In particular, Western Ag argues that the Tonn Family's engineering expert failed to meet the standards for expert witnesses set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In response, the Tonn Family argues that the district court did not abuse its discretion because their engineering expert based his opinions on his educational background and on his experience as a civil engineer as well as on his visual inspection of the damaged clay tiles.

12

Our standard of review on appeal is mixed. We first examine the record to determine whether the district court properly performed its gatekeeping role and applied the proper standard in admitting expert testimony. Because these determinations involve questions of law, our review is unlimited. See *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 493, 369 P.3d 966 (2016). After this determination is made, we then turn to the question of whether the district court abused its discretion in admitting the expert testimony at trial. 52 Kan. App. 2d at 493-94; see *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019). A judicial action constitutes an abuse of discretion only if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

The 2014 Kansas Legislature amended K.S.A. 60-456 through K.S.A. 60-458. In doing so, our Legislature effectively abrogated the long-held reliance by Kansas courts on the test for admissibility of scientific evidence under the test first articulated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). As a result, Kansas courts now apply a test based upon the principles of *Daubert* and consistent with Federal Rule of Evidence 702. See *In re Care & Treatment of Cone*, 309 Kan. at 325-26.

K.S.A. 2020 Supp. 60-456(b) provides:

"If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

In other words, a district court has the discretion to admit a qualified expert to testify on subjects involving specialized knowledge if such testimony assists the trier of

fact in either understanding the evidence presented at trial or in resolving an issue of fact. To determine if an expert is qualified, the district court should look at such things as the witness' knowledge, training, or education. Likewise, the district court must determine if the proposed testimony is founded on sufficient information, based on reliable methods as applied to the facts of the particular case.

Some of the factors to which a district court may look in examining reliability of the principles and methods used by an expert witness in rendering his or her opinions include: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Daubert*, 509 U.S. at 592-94. Although these four factors may be helpful to a district court in performing its gatekeeping duty, they are not a definitive checklist or test. Depending on the specific facts and issues presented, a district court may focus on such things as the expert's personal knowledge or experience. See *Smart*, 52 Kan. App. 2d at 495 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 [1999]) (expanding the *Daubert* inquiry to cover expert testimony that is not purely scientific in nature).

Accordingly, the district court must make two fundamental decisions: (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) whether the proposed expert testimony is reliable and relevant so that it will assist the trier of fact. *Smart*, 52 Kan. App. 2d 486, Syl. ¶ 7. The district court satisfies its gatekeeper role by "reading the briefs on the motion to strike, conducting a hearing, and ruling on the reliability of the challenged testimony." *Smart*, 52 Kan. 2d at 493. As this court has previously found, "The purpose of the reliability determination is not to decide whether the expert's conclusions are correct but whether the analysis used to reach them is reliable." 52 Kan. App. 2d at 495. On appeal, our review of a district court's

determination "begins with understanding whether an expert is basing his or her testimony on scientific theory, or, rather, on experience." 52 Kan. App. 2d at 495.

Here, Western Ag asserts that Wright was not qualified to render expert opinions at trial because "he never had a specific course or training in hail damages." Western Ag also argues that Wright was "unable" to answer certain hypothetical questions posed by defense counsel during his deposition and was unable to point to any specific articles regarding what to look for in determining whether clay tiles were damaged by hail. Rather, Wright relied upon his education, experience, and his visual inspection of the roofs at the ranch.

Western Ag suggests that visual examination is not a principle or method to distinguish the difference between damage caused by foot traffic on the roofs versus the damage caused by hail. However, Western Ag overlooks the *Kumho Tire* case, which was decided by the United States Supreme Court six years after *Daubert*. As indicated above, *Kumho Tire* expanded the *Daubert* inquiry to cover expert testimony that is not purely scientific in nature. See *United States v. Medina-Copete*, 757 F.3d 1092, 1101 (10th Cir. 2014).

As the Honorable J. Thomas Marten explained in *Seifert v. Unified Government of Wyandotte County*, No. 11-2327-JTM, 2016 WL 107932, at *2 (D. Kan. 2016):

> "[A]n expert may be qualified to render opinions based on experience alone. [*Kumho Tire*, 526 U.S. 137.] See *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004). To the extent a witness is relying primarily on experience, he or she 'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)."

15

Although the proponent of expert testimony bears the burden of showing that it is admissible, the exclusion of expert testimony is the exception rather than the rule. See *Smart*, 52 Kan. App. 2d at 496; see also *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013); Fed. R. Evid. 702 advisory committee's note to 2000 amendments. In *Smart*, this court found that *Kumho Tire* "teaches that *Daubert* is not talismanic; it simply means that prior to admitting expert testimony, the court must ensure the testimony "'is not only relevant, but reliable.'"" *Smart*, 52 Kan. App. 2d at 493 (quoting *Kumho Tire*, 526 U.S. at 147). "'The objective of that requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Smart*, 52 Kan. App. 2d at 496.

In this case, after being retained by the Tonn Family, Wright travelled to the ranch to perform a visual inspection. In his opinion, several of the roofs on the ranch—including both of the clay tile roofs—showed signs of hail damage. We pause to note that one of Western Ag's expert witnesses agreed that the roofs of the bunkhouses had been damaged by hail and that the cedar shingles on the horse barn also showed signs of hail damage. Following his inspection of the structures at the ranch, Wright prepared a report setting forth his opinions.

In his report, he identified various factors that he considered when inspecting the clay tiles and in determining the cause of damage. In addition, Wright explained in his deposition that in forming his opinions, he examined "the roof slopes, the orientation of the roof slopes, [and] the condition of the various materials." He further explained in a supporting affidavit filed in response to Western Ag's motion to strike that he also considered the material properties of the clay tiles, the installation method of the tiles, the decking material used to support the tiles, the material used to fasten the tile to the decking, and the historical exposure to the elements based on weather reports.

16

At trial, Wright testified consistent with the opinions expressed in his report, in his deposition, and in his supporting affidavit. He also explained that he was unable to answer the hypotheticals posed to him by counsel for Western Ag because he believed he had not been supplied with "all of the pertinent . . . evidence to form an opinion on." It was then left to the jury to determine the weight to give to Wright's testimony as well as to the testimony of Western Ag's expert witnesses.

It does not appear that Western Ag is challenging Wright's education, professional credentials, or experience. Even if it were, we note from a review of the record that Wright is a well-qualified civil engineer and is licensed as a professional engineer in Kansas as well as in several surrounding states. Moreover, it is undisputed that he visited the Tonn Family's ranch and personally inspected the damage on the clay tiles of the roofs prior to providing his opinion as to causation.

Based on our review of the record, we find that the district court appropriately applied the law and performed its gatekeeping duty as required by K.S.A. 2020 Supp. 60-456(b). We also find that the district court's conclusions regarding its pretrial ruling are supported by substantial competent evidence in the record. In addition to the information gleaned by Wright in performing an inspection of the roofs, his opinions were also supported by weather reports as well as testimony regarding his professional experience.

At trial, Wright testified that the method he employed to determine the nature and extent of the damage to the roofing materials was to perform an up-close visual inspection. In turn, Wright explained that he used his education as a civil engineer and experience in materials research as well as forensic investigations to render his opinions. In particular, Wright testified that he considered the material properties of the clay tiles and accounted for various factors such as the style of the clay tile, the original installation, the decking material, the fastener type, the age of the roofs, and the location of impact damage observed on each tile. He also testified that he considered the historical

17

weather exposure as well as weather reports for the dates on which the hail damage allegedly occurred.

We do not find that Wright's methodology was outside the realm of the reliability required by K.S.A. 2020 Supp. 60-456(b) for an expert to be allowed to render opinion testimony at trial. Rather, we find the methodology used by Wright to be similar—if not identical—to that used by other experts in cases involving hail damage. See, e.g., *Bureau v. State Farm Fire and Cas. Co.*, 129 Fed. Appx. 972, 974-77 (6th Cir. 2005) (unpublished opinion) (rejecting insurer's *Daubert* challenge based on argument that the expert's "visual inspection of the roof was insufficient to allow him to testify as an expert on structural engineering issues"); *Royale Green Condo Ass'n, Inc. v. Aspen Spec. Ins. Co.*, No. 07-21404-CIV, 2008 WL 2397623, at *2 (S.D. Fla. 2008) (unpublished opinion) (denying insurer's *Daubert* motion where expert had visually inspected roof).

The record reflects that Wright used his professional training and experience to evaluate what he personally observed during his visual inspection of the roofs. The only significant difference between the methodology used by Wright and Western Ag's featured expert is that Goode relied on a study conducted by Haag Engineering, who is his employer. Heffernan also testified that he was familiar with the Haag Engineering study. However, the methodology described by all three experts was similar. Consistent with Wright's explained methodology, both Goode and Heffernan explained that they essentially relied on the totality of their observations in determining whether a clay tile had been damaged by hail. Although we take no position on the accuracy of the study conducted by Haag Engineering, we do note that one might question the objectivity of relying on such a report under these circumstances. At the very least, Wright was under no obligation to concur with the Haag study.

According to the Haag Engineering study, clay tiles can only be fractured by hail that is approximately 1.5 inches or larger in diameter and of a sufficient density. The

18

study contains a number of photographs illustrating what was referred to in this case as "radial," "emanating," or "starburst" fractures to clay tiles.

Relying on the study—as well as upon his own professional training and experience—Goode rendered the opinion at trial that hail damage on clay tiles is evidenced by "radial" fractures while the damage he observed on the roofs at the Tonn Family's ranch appeared to be mostly "linear" or "horizontal" in nature. As a result, Goode opined that the damage on the roofs at the ranch was caused by "foot traffic" and not by hail. Interestingly, Goode admitted during cross-examination that a photograph he produced that purportedly showed an example of a clay tile roof damaged by hail actually depicted "lateral" factures and not "radial" fractures. In fact, Goode agreed that there were "linear factures all over that photo."

On the other hand, Wright explained in his deposition—and again at trial—that he did not agree with the opinion stated in the Haag Engineering article because the testing performed did not replicate actual field conditions. He also opined that the Haag Engineering study was not performed in accordance with ASTM International—formerly known as the American Society for Testing and Materials—standards. In contrast to Goode, Wright rendered the opinion that the shape of the clay tile on the roofs at the Tonn Family ranch—as well as the points of impact of the hail during the storm—caused the resulting fracture. In addition, Wright opined that there is no such thing as "generic hail damage to any roofing material due to the variables in size, shape, and density of the impacting hail stones."

We do not find Wright's reluctance to rely on the Haag Engineering study to disqualify him from testifying as an expert at trial. Wright testified that in his professional opinion the study did not accurately reflect field conditions and was not conducted in accordance with industry standards. We note that Western Ag's other expert, Heffernan, testified that "it's not just about the fracture pattern of the tile, itself.

19

You need to look at the frequency of those fractures and how they're occurring as a pattern across the whole roof." Similarly, Goode himself testified that his methodology included letting "the building tell the entire story" and considering how the entire roof system could have been affected by a storm event.

Likewise, we do not find that the questions raised by Western Ag undermine the district court's decision to allow Wright to testify as an expert but rather show potential areas for cross-examination. See *Cummings v. Standard Register Co.*, 265 F.3d 56, 64-65 (1st Cir. 2001) ("shortcomings" in an expert's calculations affected weight and credibility); *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040-41 (11th Cir. 1988) (deficiencies in the methodology used by an expert as the basis for the expert's opinion affected the weight and not the admissibility of the expert's opinion); *Simmerman v. Ace Bayou Corp.*, No. 5:14-382-DCR, 2016 WL 540873, at *8 (E.D. Ky. 2016) (unpublished opinion) (plaintiffs demonstrated potential areas for cross-examination but did not demonstrate that the expert's methods were unreliable).

In *Lundeen v. Lentell*, No. 114,494, 2017 WL 2833984, at *10 (Kan. App. 2017) (unpublished opinion), a panel of this court rejected the defendant's attempt to exclude the expert opinion of the plaintiff's expert, Dr. Eric Colton. In doing so, this court found:

> "Much of Dr. Lentell's argument on this issue consists of attacks on the specific testimony given by Dr. Colton rather than showing how the trial court erred in applying the *Daubert* principles in this case. Lundeen does not need to prove that Dr. Colton was indisputably correct or even that his theory is 'generally accepted' by his scientific community. She merely needed to show that Dr. Colton's method used in reaching his opinions was scientifically sound and that his opinions were based on the facts of the case. See *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781-82 (10th Cir. 1999). Even though *Daubert* requires the trial court to act as a gatekeeper to expert testimony, it is not meant to replace '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' as the traditional means of attacking evidence. [*Daubert*,] 509 U.S. at 596." 2017 WL 2833984, at *10.

20

Here, Western Ag was allowed to vigorously cross-examine Wright, argue against the weight of his opinions, and present contrary opinions in support of its defense. Moreover, a review of the record reveals that the jury was properly instructed regarding the Tonn's Family burden of proof at trial. As counsel for Western Ag recognized during closing arguments to the jury:

> "[Y]ou can compare how a witness testifies on the stand. Who gave you more confidence? Mr. Goode, who is from Haag; who answered the questions 'yes' or 'no;' said he found small hail . . . which maybe is not a big deal? What's more important is how he testifies and what he knows versus Mr. Wright who didn't know very much. That's for your decision."

Indeed, it was ultimately the jury's decision to determine which expert witness and opinions it should give more weight to based on the evidence admitted at trial.

In summary, "The purpose of the reliability determination is not to decide whether the expert's conclusions are correct but whether the analysis used to reach them is reliable." *Smart*, 52 Kan. App. 2d at 495. The law grants a district court broad latitude when it decides how to determine reliability. 52 Kan. App. 2d at 496. It is the district court's duty to ensure that an expert witness—whether basing his or her opinions on professional studies or personal experience—uses the type of intellectual rigor that characterizes the practice of the expert's field of study. *Kumho Tire*, 526 U.S. at 152. Here, we find the record on appeal shows that the district court considered the appropriate factors and acted within its discretion to allow Wright to testify as an expert witness at trial. Consequently, we conclude that the district court did not err in ruling that he was qualified as an expert under K.S.A. 2020 Supp. 60-456(b).

*Amount of Recoverable Damages*

Next, Western Ag contends that a provision in the insurance policy it issued to the Tonn Family limits the amount of recoverable damages to the amount actually spent for repairs. In response, the Tonn Family contends that Western Ag did not preserve this defense in the agreed pretrial order or otherwise preserve it at trial. Moreover, the Tonn Family asserts that it contracted with Western Ag for the replacement value of the historic clay tiles "with material of like kind and quality" and that the insurance carrier should not be able to use its own breach of contract in an attempt to reduce its liability.

On appeal, we exercise unlimited review over the interpretation and legal effect of written instruments including insurance policies. *Miller v. Westport Insurance Corp.*, 288 Kan. 27, Syl. ¶ 2, 200 P.3d 419 (2009). Moreover, "[A] presumption of validity attaches to a judgment of the district court until the contrary is shown." *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 602, 647 P.2d 1268 (1982). As such, we are not to set aside a judgment unless it is "affirmatively made to appear that such judgment is erroneous." *Lygrisse*, 231 Kan. at 602.

At the outset, we find it significant that Western Ag did not assert this issue during discovery, it did not preserve it in the agreed pretrial order, and it did not raise it during the trial. Instead, even though Western Ag knew the damages that the Tonn Family was seeking well in advance of trial, it waited until after the jury's verdict to bring this issue to the district court's attention for the first time.

The record shows that the parties submitted an agreed pretrial order that was entered by the district court on March 8, 2018. In the agreed pretrial order, the Tonn Family asserted a claim to replace the "historical tiles" in the amount of $452,436. In addition, the Tonn Family asserted that it "only selected the 'modern' version of the tiles due to the uncertainty of litigation." In its contentions, Western Ag asserted that the roofs

22

at the ranch were not damaged by wind or hail and, as such, were not covered by the terms of the insurance policy. Likewise, Western Ag identified only two questions of law in the agreed pretrial order—one relating to whether the Tonn Family's expert should be stricken and the other relating to whether the Tonn Family could recover on its negligence claim.

Throughout this case, the Tonn Family consistently claimed that it was entitled to replacement cost of the value of the historic version of the clay tiles. However, at no point prior to the jury's verdict being rendered did Western Ag assert that the damages—if any—to be awarded should be capped at $216,000. Even at trial, Western Ag did not object to the jury instruction stating that the Tonn Family was seeking $452,000 in damages to replace the roofs on the main dwelling and Ty's house. As indicated above, it was only after the jury had awarded the Tonn Family the full replacement cost that Western Ag raised this issue for the first time in its motion to alter or amend.

We conclude that the district court did not err in denying Western's Ag's motion to alter or amend the judgment based in part on Western Ag's failure to raise this issue until after the jury verdict. Consistent with K.S.A. 2020 Supp. 60-216(d), the agreed pretrial order entered by the district court stated that it "supersedes all pleadings and shall control the trial of this matter." It is well-settled that "a trial court should not entertain an issue or claim that is omitted from the pretrial order." *Bussman v. Safeco Insurance Co. of America*, 298 Kan. 700, 708, 317 P.3d 70 (2014). The purpose of this rule is to eliminate surprise at trial by fully disclosing to all parties the anticipated evidence and legal issues. 298 Kan. at 708. In other words, failure to include a defense in the pretrial order—unless modified by agreement of the parties or by subsequent order of the district court—precludes its consideration later in the proceedings. See *Smith v. Oliver Heights*, 49 Kan. App. 2d 384, 391-92, 311 P.3d 1139 (2013); see also *Parlett v. Bradford*, No. 111,564, 2015 WL 717905, at *4 (Kan. App. 2015) (unpublished opinion).

23

Furthermore, "[I]t is proper for a district court to deny a motion to alter or amend if the movant could have—with reasonable diligence—presented the argument or evidence before the entry of the final order." *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018).

We do not find the cases cited by Western Ag in an attempt to avoid the consequences of its failure to raise this issue until after the jury trial to be persuasive. We note that unlike this case, *Estes v. State Farm Fire & Casualty Co.*, 358 N.W.2d 123 (Minn. App. 1984), involved a trial to the court on stipulated facts and that the alleged limitation on the amount of the award was an issue presented at trial. Moreover, in *State Farm Fire & Casualty Co. v. Patrick*, 647 So. 2d 983 (Fla. App. 1994), the replacement cost issue was raised in a motion for summary judgment filed prior to trial.

Similarly, in *Huggins v. Hanover Ins. Co.*, 423 So. 2d 147 (Ala. 1982), the issue of whether the terms of the insurance policy limited the amount of recovery was presented at trial. Also, in *Weidman v. Erie Ins. Group*, 745 N.E.2d 292 (Ind. App. 2001), the issue of damages that could be recovered under the terms of an insurance policy was raised by the insurance company prior to trial. Likewise, in *Parks v. Safeco Insurance Company*, 160 Idaho 556, 376 P.3d 760 (2016), the limits of the policy were brought up in a motion for summary judgment.

In this case, Western Ag could have easily presented this issue by way of a summary judgment motion or a motion for determination of a question of law prior to trial. It also could have preserved this issue by raising it in the agreed pretrial order as an alternative defense or as a question of law to be determined by the district court. Even at trial, Western Ag could have requested that the district court amend the agreed pretrial order to allow it to assert its defense. However, Western Ag did none of these things. Instead, it decided to defend this case on the theory that the historic clay tiles were

damaged by foot traffic on the roofs that occurred over a long period of time rather than by hail.

Even if we were to address the merits of Western Ag's argument, we do not find the policy language in question to provide the relief that the insurance company has belatedly requested. In particular, we note that Western Ag points us to the following language in the "Farm Property—Farm Dwellings" section of the insurance policy issued to the Tonn Family:

"**LOSS, CONDITION—VALUATION**:

"1. Property

. . . .

"b. If the Limit of insurance on the damaged structure is at least 80% of its full replacement cost as of the time of loss, *we will settle the loss* based on the smallest of the following amounts:

"(1) The cost to replace the damaged part of the structure with material of like kind and quality and for like use;

"(2) The amount actually and necessarily spent to repair or replace the structure; or

"(3) The actual limit of insurance." (Emphasis added.)

Of course, Western Ag did not "settle the loss" that the Tonn Family claimed was caused by the hailstorm in April 2015. Instead, it denied the claim and the Tonn Family filed this lawsuit for breach of the insurance contract. The types of damages recoverable in a breach of contract action include all of the consequential damages that arise from the breach of contract, and those damages may exceed policy limits if the insured can show "the excess judgment is traceable to the insurer's conduct." *Gruber v. Estate of Marshall*, 59 Kan. App. 2d ___, 2021 WL 219229, at *11 (Kan. App. 2021); see *Neighbors Construction Co. v. Woodland Park at Soldier Creek*, 48 Kan. App. 2d 33, 55, 284 P.3d 1057 (2012). In Kansas, "[F]undamental fairness" requires that those who fail to perform

25

under an obligation agreed upon by the parties "'cannot take advantage of the failure.'" *Davis v. Key Gas Corp.*, 34 Kan. App. 2d 728, 739, 124 P.3d 96 (2005).

We also find guidance in the case *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1032 (Col. App. 2002), in which the Colorado Court of Appeals held that an "actually and necessarily spent" limitation in an insurance policy similar to the one relied on by Western Ag in this case could not be used by an insurer to reduce its liability after denying a claim. The Colorado court found that the case did not present a situation "where plaintiff elected to spend less than the amount offered by the insurer." 62 P.3d at 1032. Instead, it was the insurance carrier's breach of contract that caused the plaintiff to make the necessary repairs to her property. Appropriately, the Colorado court concluded it was improper to allow the insurance carrier to "rely on circumstances resulting from its own actions to deny coverage." 62 P.3d at 1032. For the same reason, we find that Western Ag should not be able to take advange of its own breach of contract in order to avoid otherwise recoverable damages for breach of contract.

In summary, we find that Western Ag failed to raise this issue by way of a pretrial motion, in the agreed pretrial order, or during the course of the jury trial. Because it waited to raise the issue until after the jury returned its verdict, we conclude that the district court properly denied the motion to alter or amend the judgment on this basis. Furthermore, we conclude that even if Western Ag had properly raised this issue prior to the verdict, the policy language on which it relies is not applicable on its face because the insurance carrier chose not to settle this matter and it should not be allowed to benefit from its breach of the insurance contract.

*Claim for Personal Property Loss*

Western Ag also contends that the district court erred by not setting aside the jury's verdict awarding damages to the Tonn Family for personal property loss in the amount of

26

$25,000. In particular, it argues that the Tonn Family failed to give "prompt notice" of its claim for personal property loss or damages. To the extent this issue involves an interpretation of Western Ag's insurance policy, our review is unlimited. *Miller*, 288 Kan. 27, Syl. ¶ 2. However, whether an insurer has been prejudiced from the failure to provide timely notice is a question of fact unless the relevant facts are undisputed. *Geer v. Eby*, 309 Kan. 182, 195, 432 P.3d 1001 (2019).

Once again, Western Ag waited to raise this policy defense until after the jury had rendered its verdict. Specifically, Western Ag raised the issue for the first time in its posttrial motion to alter or amend the judgment under K.S.A. 2020 Supp. 60-259(f). By waiting until after the trial to raise this issue, the Tonn Family was not afforded the opportunity to counter this defense. Moreover, the jury was not given the opportunity to make that determination.

In support of its position, Western Ag cites us to our Supreme Court's case of *Geer.* However, in contrast to this case, the notice defense was asserted by the insurance carrier in *Geer* prior to trial. Furthermore, the issue was presented to the district court at a bench trial based on stipulated facts. 309 Kan. at 187. As such, we find *Geer* to be distinguishable from the present case.

In Kansas, "The assertion of a condition as a reason to avoid liability under an insurance policy is an affirmative defense upon which [the insurer] bears the burden of proof." *Evergreen Recycle, L.L.C. v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 473, 350 P.3d 1091 (2015). As the parties are aware, K.S.A. 2020 Supp. 60-208(c) requires that all affirmative defenses be raised in an answer or other responsive pleading. "A defendant failing to assert an affirmative defense waives it." *In re Estate of Beldon v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011); *Diversified Financial Planners, Inc. v. Maderak*, 248 Kan. 946, Syl. ¶ 4, 811 P.2d 1237 (1991). As discussed

above, the same is true for defenses not raised in the pretrial order. *Bussman*, 298 Kan. at 708.

Here, a review of the record reveals that Western Ag was aware of the Tonn Family's personal property claim from its answers to written discovery and questioned Tiya about it during her deposition. Despite having knowledge of the claim, Western Ag did not seek to amend its answer to include this policy defense. Likewise, although the Tonn Family included their property loss claim in the amount of $25,000 in the agreed pretrial order, Western Ag failed to include this policy defense. At the very least, Western Ag should be bound by the defenses and issues preserved in the agreed pretrial order. As we stated previously, "[I]t is proper for a district court to deny a motion to alter or amend if the movant could have—with reasonable diligence—presented the argument or evidence before the entry of the final order." *Ross-Williams*, 55 Kan. App. 2d at 564. Thus, we conclude that Western Ag has waived this policy defense by failing to raise it until after the jury had returned its verdict. We find the district court did not err in denying Western Ag's motion to alter or amend the judgment on this basis.

*Award of Prejudgment Interest*

Next, Western Ag contends that the district court erred in awarding prejudgment interest under K.S.A. 16-201 because the amount of damage was not liquidated. The standard of review for the district court's decision to award prejudgment interest is abuse of discretion. *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002). However, to the extent that this issue requires us to interpret K.S.A. 16-201, our review is unlimited. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). Although a determination of whether to award prejudgment interest is a matter left to the sound discretion of the district court, it must first have the legal authority to do so.

In Kansas, K.S.A. 16-201 grants a district court the authority to grant prejudgment interest under certain circumstances. This statute provides in pertinent part:

> "Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, *from the day of liquidating the account and ascertaining the balance*."

In other words, the general rule is that prejudgment interest may be awarded on liquidated claims. *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 925, 157 P.3d 1109 (2007). A claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain or when the amount due is definitely ascertainable by mathematical computation. *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 686-87, 847 P.2d 1292 (1993); *Lindsey Masonry Co. v. Murray & Sons Construction Co.*, 53 Kan. App. 2d 505, 523, 390 P.3d 56 (2017). Accordingly, if a claim is not liquidated or fixed, there is no legal authority for a district court to award prejudgment interest.

A review of the record—including the agreed pretrial order and the trial transcript—reveal that the Tonn Family's claim was never liquidated, fixed, certain, or definite. Rather, several estimates for repair of the clay tile roofs were introduced by the parties. By definition, the term "estimate" is "a rough or approximate calulation" and is not a fixed amount. Merriam-Webster's Collegiate Dictionary 396 (10th ed. 2001); see *Nevada Restaurant Services, Inc. v. Clark County*, 981 F. Supp. 2d 947, 957 (D. Nev. 2013); see also *Rental Equip., Inc. v. McDaniel Builders, Inc.*, 91 Cal. App. 4th 445, 449, 109 Cal. Rptr. 2d 922 (2001) ("[t]he dictionary definition of 'estimate' is 'an approximate computation of the probable cost of a piece of work made by a person undertaking to do the work'"); *Kruse Concepts, Inc. v. Shelter Mut. Ins.*, 16 S.W.3d 734, 738 (Mo. App. E.D. 2000) (an estimate is not a statement of fact).

We find nothing in the record on appeal to indicate that Western Ag ever stipulated to a specific amount that it owed the Tonn Family for the damage to the clay tiles. Similarly, we find nothing in the record to suggest that Western Ag made any settlement offers that were accepted by the Tonn Family. Instead, a review of the record confirms that the parties did not reach an agreement on the nature and extent of damages sustained by the Tonn Family nor did they even agree as to the cause of the damage to the clay tile roofs. Each of these issues remained for trial.

In this case, the district court relied on an estimate submitted by Eaton Roofing to Western Ag early in the claim process in the amount of $468,453.72. As discussed above, by its very nature an estimate is a mere approximation and is not liquidated, fixed, or certain. Moreover, there is no evidence in the record that Western Ag ever agreed to this estimate nor is there evidence that the insurance carrier ever agreed to pay the Tonn Family this sum of money. Thus, we conclude that the district court did not have the legal authority under K.S.A. 16-201 to award prejudgment interest under the circumstances presented.

In an attempt to sidestep the statutory requirments, the Tonn Family argues that the district court had the authority to award prejudgment interest under equitable principles. In Kansas, an equitable exception has been recognized to the general rule that prejudgment interest is allowable only for liquidated claims under K.S.A. 16-201. However, it is important to recognize that this exception is available only when a defendant retains and makes actual use of a plaintiff's money. *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, Syl. ¶ 12, 562 P.2d 1 (1977) ("Where a party retains and makes actual use of money belonging to another, equitable principles require that it pay interest on the money so retained and used."); see *Farmers State Bank v. Production Credit Assoc. of St. Cloud*, 243 Kan. 87, 102-03, 755 P.2d 518 (1988).

30

In *Lightcap*, which involved a claim for royalties under natural gas leases, the Kansas Supreme Court—in the context of an oil and gas lease—affirmed an equitable award of prejudgment interest where the defendant "made active use of plaintiffs' money, and plaintiffs were deprived of that use." 221 Kan. at 469. Specifically, the defendant was paying the plaintiffs on the basis of an old contractual royalty rate while collecting an increased rate from producers. In turn, the defendant kept and made active use of the additional money owed to the plaintiffs and deprived them of the use of that money. As a result, our Supreme Court understandably concluded that it was appropriate for the district court to award interest the plaintiff's money "impounded" by the defendant. 221 Kan. at 469.

As such, we find that an equitable award of prejudgment interest is not applicable in a case that "does not involve a party's retention of money rightfully belonging to another." *Equity Investors, Inc. v. Academy Ins. Group, Inc.*, 229 Kan. 456, 460, 625 P.2d 466 (1981); see *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 152, 673 P.2d 1200 (1984) (Kansas cases allowing an equitable award of prejudgment interest "have all involved claims for interest allegedly due as compensation for the detention of money."); *Argora Properties, L.P. v. Foulston & Siefkin, L.L.P.*, 70 Fed. Appx. 989, 998 (10th Cir. 2003) (unpublished opinion) ("The equitable remedy rests upon a theory of restitution. It depends on the withholding of a known sum of money belonging to another."). As such, we find that an equitable award of prejudgment interest is appropriate only in unusual and limited circumstances—like those that occurred in *Lightcap* and *Farmers State Bank*—in which the defendant keeps and makes actual use of money that belongs to the plaintiff. It is only in that unusual and limited situation that equitable principles permit a district court—in its discretion—to award prejudgment interest on unliquidated claims.

Here, there is no evidence in the record on appeal to support a finding that Western Ag somehow "impounded" or "made active use" of money it knew belonged to

31

the Tonn Family. In contrast, there was a legitimate dispute in this c ase as to whether the Tonn Family was entitled to recovery on its hail damage claim and, if so, as to the amount owed by Western Ag to satisfy its obligations under the insurance contract. Western Ag did not use or hold the Tonn Family's money by refusing to settle an insurance claim that was disputed both as to liability and as to the amount of damages. Furthermore, the Tonn Family did not make a claim in this case that Western Ag acted in bad faith in the way that it handled its claim.

The amount of damages—if any—to be awarded in this case was a contested question of fact for the jury. Indeed, as discussed above, the opinions expressed at trial by the expert witnesses regarding causation varied greatly. Likewise, the evidence presented regarding the cost to repair the clay tile roofs was wide-ranging. Because the amount was not liqudated or fixed, the district court had no authority to award prejudment interest under K.S.A. 16-201. Although it is unfortunate that the Tonn Family had to borrow money to make repairs due to the uncertainties of litigation, this is not a case in which Western Ag impounded or made use of the ranch's money.

Because there is no evidence in the record that Western Ag "impounded" or "made active use" of the Tonn Family's money, we conclude that this is not one of the exceptional cases which could justify an equitable award of prejudment interest under Kansas law. Moreover, we find that an award of prejudment interest is not supported by either the law or the facts. Accordingly, we conclude that the district court abused its discretion. Therefore, we reverse the district court's award of prejudment interest in this case.

*Attorney Fees Awarded by District Court*

The last issue presented by Western Ag is whether the district court's award of attorney fees was excessive. Where the district court has authority to grant attorney fees,

its decision whether to award fees is reviewed under the abuse of discretion standard. *Consolver v. Hotze*, 306 Kan. 561, 568, 395 P.3d 405 (2017). The district court has wide discretion to determine the amount and recipient of attorney fees. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 973, 255 P.3d 34 (2011). When reviewing an award of attorney fees, we do not reweigh the testimony or the evidence presented or reassess the credibility of witnesses. Rather, we are to examine the record to determine if the district court's decision was supported by substantial competent evidence. *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 203-04, 235 P.3d 515 (2010).

In deciding the reasonableness of an attorney fee, the eight factors set forth in Rule 1.5(a) (2020 Kan. S. Ct. R. 297) of the Kansas Rules of Professional Conduct should be considered. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013). The district court is an expert in the area of attorney fees and can draw on its own knowledge as well as expertise in determining the value of services rendered. Although an appellate court is also an expert on the reasonableness of attorney fees, we are not to substitute our judgment for that of the district court on the amount of the attorney fees awarded unless it is required in the interest of justice. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006); *State ex rel. Schmidt v. Nye*, 56 Kan. App. 2d 883, 896, 440 P.3d 585 (2019).

The parties do not dispute that the district court had the authority under K.S.A. 40-908 to award attorney fees in favor of the Tonn Family because it was successful in bringing this action to enforce the terms of an insurance policy covering loss by fire, tornado, lightning, or hail. Rather, Western Ag argues that the amount awarded was excessive. Although it does not appear to challenge that a 40% contingency fee is reasonable, Western Ag suggests that the amount should be based on a lower judgment amount in light of the arguments asserted on appeal. Also, it suggests that the district court acted unreasonably in ordering an additional amount for handling the posttrial motions.

33

Because we have set aside the award for prejudgment interest, we find that the appropriate remedy would be to remand this matter to the district court to reconsider the amount of attorney fees to be awarded on the reduced judgment. Under the circumstances presented, we will yield to the district court's discretion regarding whether to apply the 40% contingency fee on the reduced judgment or to order some other reasonable amount based on a lodestar computation. Regardless of which method is chosen by the district court, the fees must be reasonable based on the factors set forth in Rule 1.5(a).

Notwithstanding the above, we find that the method used by the district court in calculating an award of fees for the handling of posttrial matters was not appropriate. Although the district court may find an award for the additional work performed by the Tonn Family's counsel to be justified, any attorney fees awarded for posttrial services should be determined on an hourly or lodestar basis because there was no additional recovery. See *Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992) (lodestar presumptively yields reasonable and appropriate fee); see also *Richardson v. Murray*, No. 120,680, 2020 WL 4723097, at *9-14 (Kan. App. 2020) (unpublished opinion) (Atcheson, J., concurring) (explaining lodestar approach in concurring opinion). Accordingly, we remand the issue of attorney fees to the district court for reconsideration in light of this opinion.

*Failure to Award Litigation Expenses*

In its cross-appeal, the Tonn Family claims the district court erred when it denied its request for litigation expenses as part of the award of fees and costs. In response, Western Ag points out that K.S.A. 40-908 does not grant the district court the authority to award expert fees or litigation expenses in excess of those that are normally allowable under K.S.A. 2020 Supp. 60-2003. Again, this issue involves a mixed standard of review. The standard of review regarding the amount of reimbursement for attorney fees and costs is abuse of discretion. See *Wendt v. University of Kansas Medical Center*, 274 Kan.

966, 982, 59 P.2d 325 (2002). However, to the extent that the resolution of this issue requires us to interpret statutory authority, our review is unlimited. *Nauheim*, 309 Kan. at 149.

The Tonn Family sought reimbursement of litigation expenses in the amount of $17,395.52. The bulk of these expenses were for the fees and expenses charged by the Tonn Family's expert witnesses. The request also included expenses for items such as court reporting services for transcripts not otherwise recoverable as costs, travel expenses, and expenses related to exhibits. We find that the district court appropriately denied the Tonn Family's request for litigation expenses.

On its face, K.S.A. 40-908 is limited to an award of "a reasonable sum as an attorney's fee for services" in an action against an insurance carrier arising out of a policy providing coverage "against loss by fire, tornado, lightning or hail." Nothing in the statute authorizes reimbursement of litigation expenses such as expert witness fees. Rather, K.S.A. 2020 Supp. 60-2003 defines the "costs" that may be awarded by the district court. Although certain litigation expenses are included, K.S.A. 2020 Supp. 60-2003 does not include the reimbursement of the fees and expenses paid by a party to an expert witness.

In denying the Tonn Family's request for litigation expenses, the district court determined:

"The Court finds when the Kansas Legislature intends to vest a judge or administrative tribunal with discretion to award expert witness fees to a party, the legislature made an explicit authorization of authority. The Court finds *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359[, 204 P.3d 1156] (2009), is controlling law, where the Kansas Supreme Court found expert witness fees have never been included in the definition of items allowable as costs under K.S.A. 60-2003. Therefore, the Court does not allow Plaintiff her expert witness fees allowed as costs of the action."

35

We agree with the district court's analysis of this issue. Under the circumstances presented, the district court did not have the authority to order Western Ag to reimburse the Tonn Family for expert witness fees or other litigation expenses that are not specified in K.S.A. 2020 Supp. 60-2003. As a result, the district court did not abuse its discretion in denying this request.

*Appellate Attorney Fees*

Finally, we must decide whether the Tonn Family should recover attorney fees on appeal and, if so, in what amount. We note that the Tonn Family filed a timely motion for attorney fees and an affidavit in support of its motion pursuant to Kansas Supreme Court Rule 7.07(b) (2020 Kan. S. Ct. R. 50). Western Ag did not file a response.

Kansas Supreme Court Rule 7.07(b)(1) (2020 Kan. S. Ct. R. 50) grants appellate courts the authority to exercise the discretion to "award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Here, it is undisputed that the district court had the authority to award reasonable attorney fees under K.S.A. 40-908. As a result, we also have authority to award reasonable attorney fees on appeal.

In support of its motion, the Tonn Family has provided this court with an itemized statement of the professional services it has rendered on appeal. Based on an hourly rate, the total amount of attorney fees for the services performed for the appeal and cross-appeal are in the amount of $41,742.50. The Tonn Family also attached a contingency fee agreement to its motion that states, in part, that its counsel's "share upon recovery from an appeal . . . would be a maximum of 45%." Moreover, the agreement provides that any expenses advanced by counsel "will be deducted from the amount recovered before the contingent fee is calculated."

36

In considering an award of attorney fees, Kansas courts are to consider each of the eight reasonableness factors listed in KRPC 1.5(a). Our Supreme Court has held that no one factor should dominate over the other factors. *Westhoff Sand Co*., 281 Kan. at 951. The eight factors set forth in KRPC 1.5(a) are:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." (2020 Kan. S. Ct. R. 297).

Reviewing these factors in the context of this appeal, we find:

*First*, although the nature of this case was not particularly complex, several of the issues presented at trial and on appeal were difficult and required a significant amount of legal skill to address them properly. As a result, this appeal required a significant amount of time and labor by counsel.

*Second*, the legal work performed by the Tonn Family's attorneys over the past four-and-a-half years would have likely precluded them from working on other matters while they were working on this case.

*Third*, the hourly rates charged by the attorneys for the type of legal services performed are reasonable and consistent with the fees customarily charged in Kansas for similar legal services.

37

*Fourth*, this case involved a significant claim for property loss. On appeal, the results obtained are mixed. On the one hand, we are affirming the jury's verdict in the amount of $514,780. On the other hand, the Tonn Family did not prevail on the appellate jurisdiction issue or on the prejudgment interest issue. Likewise, the Tonn Family did not prevail on the litigation expense issue presented in the cross-appeal.

*Fifth*, although the Tonn Family's attorneys were required to meet certain court-established deadlines, time was of the essence due to the nature of the Tonn Family's claim.

*Sixth*, this is the first legal matter that the Fleeson, Gooing law firm has handled for the Tonn Family.

*Seventh*, the attorneys retained by the Tonn Family are experienced, have excellent professional reputations, and possess a high degree of legal ability.

*Eighth*, as discussed above, the Tonn Family entered into a contingency fee agreement with the Fleeson, Gooing law firm to handle all matters relating to the proceedings before the district court as well as before this court.

Based on the factors set forth in KRPC 1.5(a), we find that the hours billed by the Fleeson, Gooing law firm on appeal are reasonable. We also find that the hourly rates reflected in the firm's statement of professional services are reasonable. However, in reviewing the statement, we find that approximately $3,500 of the time billed was spent on those issues on which the Tonn Family did not prevail on appeal.

In light of the mixed results on appeal, we find that it is appropriate for us to exercise our discretion to grant the Tonn Family's motion for appellate fees on a lodestar basis without application of a multiplier. A lodestar calculation applies a reasonable

hourly rate for legal work in a particular locality to a reasonable number of hours for the litigation to arrive at a presumptively reasonable statutory award. See *Burlington*, 505 U.S. at 562 (lodestar presumptively yields reasonable and appropriate fee). In applying this calculation in this case, we conclude that $38,250 is a reasonable amount of attorney fees to be awarded on appeal.

CONCLUSION

In conclusion, we find that the district court properly applied the law and exercised its discretion in ruling that the Tonn Family's expert was qualified under K.S.A. 2020 Supp. 60-456(b) to render his professional opinions regarding causation. In particular, we find that Western Ag's arguments go to the weight to be given to the causation opinions offered by the Tonn Family's expert rather than to the admissibility of his testimony.

We also reject Western Ag's challenge to the amount of recoverable damages for breach of the insurance contract. Similarly, we reject its argument regarding the Tonn Family's personal property claim. In each instance, we find that Western Ag failed to raise the defense either in the agreed pretrial order or at trial. Instead, Western Ag waited to raise these defenses in a posttrial motion to alter and amend the judgment.

Next, we find in Western Ag's favor on its contention that the district court erred in awarding prejudgment interest under K.S.A. 16-201 because the amount of damages in this case were not liquidated, fixed, certain, or definite. As a result, we reverse the award of prejudgment interest and remand the issue of attorney fees on the reduced judgment to the district court. In addition, we find that the method used by the district court in awarding additional attorney fees for posttrial work was erroneous and we also remand this issue to the district court.

In considering the sole issue raised in the cross-appeal, we reject the Tonn Family's claim that the district court failed to award the requested litigation expenses. In particular, we find that these are not expenses specified in K.S.A. 2020 Supp. 60-2003. Finally, after considering the factors set forth in Rule 1.5(a), we award the Tonn Family $38,250 in appellate attorney fees.

Affirmed in part, reversed in part, and remanded with directions.